676 So.2d 543 (1996)
Rachel SMITH et al.
v.
STATE of Louisiana, DEPARTMENT OF HEALTH AND HOSPITALS.
No. 95-C-0038.
Supreme Court of Louisiana.
June 25, 1996.
Rehearing Denied September 3, 1996.
*544 Oscar L. Shoenfelt, III, Marjorie Ann McKeithen, Moore, Walters & Shoenfelt, for Applicant.
Gordon L. James, Jan Peter Christiansen, Hudson, Potts & Bernstein, for Respondent.
Stewart Earl Niles, Jr., Patricia Anne Bethancourt, Counsel for Louisiana Medical Mutual Ins. Co., and LAMMICO amicus curiae.
Lawrence S. Kullman, Troy E. Bain, for Louisiana Trial Lawyers Association amicus curiae.
LEMMON, Justice[*]
On several occasions, this court has recognized the right to recover damages in medical malpractice cases for the loss of a chance of survival. Hastings v. Baton Rouge Gen. *545 Hosp., 498 So.2d 713 (La.1986); Smith v. State Through Dept. of Health & Human Resources Admin., 523 So.2d 815 (La.1988) and Martin v. East Jefferson Gen. Hosp., 582 So.2d 1272 (La.1991). In Ambrose v. New Orleans Police Dept. Ambulance Serv., 93-3099, 93-3110, 93-3112, p. 4 (La. 7/5/94), 639 So.2d 216, 219 n. 4, we noted that this court has not yet addressed the method of valuation of the damages recoverable for the loss of a chance of survival. We granted certiorari in the instant medical malpractice case to address that issue.

I
In August 1987, Benjamin Smith went to E.A. Conway Memorial Hospital, complaining of a sore on top of his right foot. The attending physician diagnosed cellulitis with lymphangitis, and Smith underwent minor surgery to drain the fluid from his foot.
Smith's five-day hospitalization included a routine chest x-ray which the staff radiologist reported as showing "a mediastinal mass projected to the right of the trachea." The doctor stated that "lymphoma must be considered in the differential diagnosis" and recommended a CT scan of the thoracic area. The hospital staff failed to inform Smith or his family of the x-ray results or to recommend further testing. Smith was simply discharged from the hospital without any information about the mass in his chest.
Almost fifteen months later, Smith returned to E.A. Conway, complaining of a three-week history of "left pleuritic chest pain, fever, and chills." A second chest x-ray on October 31, 1988, compared with the August 1987 x-ray, revealed that the mass had doubled in size. Smith and his family then learned for the first time of the August 1987 x-ray report.
Further testing confirmed the diagnosis of small cell carcinoma of the lungs, a fast-acting and lethal cancer. By this time, Smith's cancer had progressed to the "extensive" stage, in that the cancer was present in both lungs and was non-operable.[1] Despite aggressive drug treatment and chemotherapy, Smith died on March 16, 1989, nineteen months after the initial x-ray. He was forty-five years old at his death.
Smith's wife and their two minor children petitioned for a medical review panel. The Louisiana Department of Health and Hospitals, which operated E.A. Conway Hospital, stipulated to its breach of the standard of care and waived the panel. In the stipulation, the Department "admit[ted] that its employees and/or physicians for whom it is responsible pursuant to La.Rev.Stat. 40:1299.39 were at fault and breached the standard of reasonable care in failing to render follow-up testing and/or treatment in connection with the x-ray of August 14, 1987." However, the Department expressly reserved the right to contest causation and damages. This action followed, seeking both survival and wrongful death damages.[2]
The Department answered, reiterating its stipulation that its employees and physicians had breached the standard of care for medical treatment under the circumstances, but contesting whether the delay in treatment had caused any damages. Alternatively, the Department asserted that if the delay in treatment caused any diminution in Smith's reasonable life expectancy, then only a reduced amount of the normal survival and wrongful death damages should be awarded.
At trial, the parties presented evidence by several doctors relating to the percentage chance of survival for certain periods of time after discovery of small cell carcinoma of the lung at various stages of progression of the disease. The trial court ruled that plaintiffs had not met their burden of proving that the fifteen-month delay in treatment resulting from the State's admitted negligence had caused Smith to die or to lose a chance of survival. The judge noted that Smith actually "lived his expected life span" after the *546 1987 x-ray, referring to the estimated length of time Smith would have been expected to survive, according to statistical averages, if he had received treatment immediately after the x-ray. Accordingly, the judge dismissed plaintiffs' action.
The court of appeal reversed, concluding that the trial court was plainly wrong in failing to find the loss of a chance of survival. 26,280 (La.App. 2d Cir. 12/9/94), 647 So.2d 653. Although Smith arguably lived without treatment as long as the average life span of a patient who underwent treatment, the court stated that every expert testified Smith had lost some chance of surviving the disease because of the Department's negligence. Supported by excellent analytical reasoning, the court held that plaintiffs were entitled to recover damages for Smith's loss of a chance of survival.
As to the method of measuring those damages, the intermediate court rejected plaintiffs' contention that they were entitled to full damages for the death, noting that plaintiffs failed to prove, more probably than not, that Smith would have survived but for the Department's malpractice. Drawing heavily on Joseph H. King, Jr., Causation, Valuation and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences, 90 Yale L.J. 1353 (1981), the court reasoned that granting recovery upon lesser proof than the more-probable-than-not rule should be balanced by a concomitant reduction of the potential damages for a case where the tort victim's death probably would not have occurred but for the defendant's fault. However, the court pointed out that the plaintiff in a loss of a chance of survival case still retains the burden of proving by a preponderance of the evidence that the defendant's negligence caused the loss of a chance.
Accordingly, the court held that "the percentage probability of loss, if less than 50%, is the proper measure of the plaintiff's damages in a case of wrongful death due to medical malpractice." 26,280, p. 11, 647 So.2d at 662. Referring to expert evidence that recurrence of cancer after five years is rare, the court then reviewed other expert testimony as to the chance of survival for five years. Four doctors testified that the chance of survival, at the stage of the disease when the initial x-ray was taken, was one to twelve percent, ten to fifteen percent, five percent, and seven to twenty-five percent respectively.[3] The experts further agreed that Smith's chance of survival at the time of the October 1988 x-ray was less than one percent. Analyzing this evidence de novo, the court concluded that the evidence preponderated to show that the Department's negligence was a substantial factor in depriving Smith of a ten percent chance of surviving for five years. Fixing the total damages at $764,347,[4] the court reduced this amount proportionate to the lost ten percent chance of survival and awarded a total of $76,434 to Mrs. Smith and her two minor children.
On plaintiffs' application, we granted certiorari, primarily to address the method of measuring the damages caused by the deprivation of a chance of survival of less than fifty percent. 95-0038 (La. 3/10/95); 650 So.2d 1167.

II
The court of appeal was correct in holding that plaintiff proved by a preponderance of the evidence that the negligence of the Department's physicians and employees deprived Smith of a chance of survival, a loss for which the Department must respond in damages. Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713 (La.1986). The court of appeal was also correct in holding that the plaintiffs were not required to prove a "reasonable" or "substantial" chance of survival. The issues in loss of a chance of survival cases are whether the tort victim lost any chance of survival because of the defendant's *547 negligence[5] and the value of that loss. The question of degree may be pertinent to the issue of whether the defendant's negligence caused or contributed to the loss, but such a tort-caused loss in any degree is compensable in damages.[6]
Allowing recovery for the loss of a chance of survival is not, as the court of appeal suggested, a change or a relaxation of the usual burden of proof by a preponderance of the evidence. Rather, allowing such recovery is a recognition of the loss of a chance of survival as a distinct compensable injury caused by the defendant's negligence, to be distinguished from the loss of life in wrongful death cases, and there is no variance from the usual burden in proving that distinct loss.
Thus, in a medical malpractice case[7] seeking damages for the loss of a less-than-even chance of survival because of negligent treatment of a pre-existing condition, the plaintiff must prove by a preponderance of the evidence that the tort victim had a chance of survival at the time of the professional negligence and that the tortfeasor's action or inaction deprived the victim of all or part of that chance, and must further prove the value of the lost chance, which is the only item of damages at issue in such a case.
All experts testified that Smith had some chance of survival if he had been treated immediately after the August 1987 x-ray, and that he had virtually no chance of survival in October 1988 after he went almost fifteen months without treatment because of the Department's negligence. Smith's chance of survival in August 1987, though not better than even, was still a chance that was denied him as a result of the Department's failure to meet its standard of care. That chance had some value when viewed from the standpoint of the tort victim and his heirs, and that value is the appropriate focus of the analysis in this case.

III
Courts and commentators have recognized three possible methods of valuation of the loss of a chance of survival in professional malpractice cases.[8]
The first, and the method we adopt today in this decision, is for the factfinder judge or juryto focus on the chance of survival lost on account of malpractice as a distinct compensable injury and to value the lost chance as a lump sum award based on all the evidence in the record, as is done for any other item of general damages.
The second method, as advocated by plaintiffs, is to allow full survival and wrongful death damages for the loss of life partially caused by malpractice, without regard to the chance of survival. We reject this argument, agreeing with the court of appeal that full recovery is not available for deprivation of a chance of survival of less than fifty percent. To allow full recovery would ignore the claimants' inability to prove by a preponderance of the evidence that the malpractice victim would have survived but for the malpractice, which is a requirement for full recovery.
*548 The third method, and the method adopted by the court of appeal in this case, is to compute the compensable chance as "the percentage probability by which the defendant's tortious conduct diminished the likelihood of achieving some more favorable outcome." Joseph H. King, Jr., Causation, Valuation and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences, 90 Yale L.J. 1353, 1382 (1981). Professor King's percentage-probability-of-loss theory estimates "the compensable value of the victim's life if he survived" and reduced that estimate according to the percentage chance of survival at the time of the malpractice. Id. This method has gained acceptance by the courts and commentators because of its pragmatic appeal, providing concrete guidelines for calculating damages and alleviating the perceived "pulling out of the hat problem" allegedly associated with the method that we adopt today. See Borgren v. United States, 723 F.Supp. 581, 582-83 (D.Kan.1989).
Our point of disagreement with the court of appeal's method of computing damages for the loss of a chance of survival is its rigid use of a precise mathematical formula, based on imprecise percentage chance estimates applied to estimates of general damages that never occurred, to arrive at a figure for an item of general damages that this court has long recognized cannot be calculated with mathematical precision. See Boutte v. Hargrove, 290 So.2d 319, 322 (La.1974); Walton v. William Wolf Baking Co., 406 So.2d 168, 175 (La.1981). When these total hypothetical damages are reduced by a numerical factor determined from evidence of percentage rates of survival for certain periods after discovery of the disease at various stages of the disease, the uncertainty progresses geometrically.
The starting point of our analysis is to recognize that the loss of a less-than-even chance of survival is a distinct injury compensable as general damages which cannot be calculated with mathematical certainty. Next, we recognize that the factfinder should make a subjective determination of the value of that loss, fixing the amount of money that would adequately compensate the claimants for that particular cognizable loss. On the other hand, the approach of the court of appeal requires the factfinder first to make a hypothetical determination of the value of survival and wrongful death claims that are not really at issue and then to discount that value mathematically. This mathematical discounting of the subjective valuation of inapplicable claims does not magically make that approach more precise or more accurate than simply allowing the factfinder to value directly the loss of a chance of survival that is the sole item of damages at issue in the case. Borgren, 723 F.Supp. at 583.
The lost chance of survival in professional malpractice cases has a value in and of itself that is different from the value of a wrongful death or survival claim.[9] The *549 jury can calculate the lost chance of survival without going through the illusory exercise of setting a value for the wrongful death or survival claims and then mechanically reducing that amount by some consensus of the expert estimates of the percentage chance of survival. The methodology for fixing damages attributable to the loss of a chance of survival should not be so mechanistic as to require the jury merely to fill in the blanks on a verdict sheet with a consensus number for the percentage chance of survival and the total amount of damages, and then have the judge perform the multiplication task.
The calculation of damages for the loss of a chance of survival is not like the calculation of comparative fault damages. In the comparative fault context, the jury determines the entire amount of general and special damages actually sustained by the tort victim, which is an amount that would be awarded in the absence of contributory negligence. The percentage reduction merely implements the law of comparative fault in fixing the tortfeasor's total obligation. But in the loss of a chance of survival context, the award of damages for this particular loss is the "bottom line" figure. Any theoretical figure representing the amount the claimants would have been awarded if they had been successful in proving the defendant's fault more probably than not caused the loss of the tort victim's life is not a concrete figure that can properly be subjected to a reduction because of plaintiffs' failure of proof. Rather, the jury in a loss of a chance of survival case merely considers the same evidence considered by a jury in a survival and wrongful death action, and the loss-of-chance jury then reaches its general damages award for that loss on that evidence as well as other relevant evidence in the record.[10]
This approach for valuation of the loss of a chance of survival is more appropriate than the method used by the court of appeal in that it allows the jury to render a verdict in the lump sum amount of damages attributable only to the lost chance of survival. This is a valuation of the only damages at issue the lost chancewhich is based on all of the relevant evidence in the record, as is done for any other measurement of general damages. Allowing the jury to consider all the evidence, including expert medical testimony regarding the percentage chances of survival, and to value directly the lost chance is more logical than requiring the jury to calculate damages for wrongful death when the physician's negligence was not the more probable cause of the death.
The method we adopt today will not leave the jury without any guidance or any factors to consider. The jury will be allowed to consider an abundance of evidence and factors, including evidence of percentages of chance of survival along with evidence such as loss of support and loss of love and affection, and any other evidence bearing on the value of the lost chance. The jury's verdict of a lump sum amount of damages can be tested on appeal for support in the record by reviewing the percentage chances and the losses incurred by the tort victim and his or her heirs, and any other relevant evidence, thus providing assurance against speculative verdicts.
Because the plaintiffs in the present case have not been afforded in either lower court the benefit of the method of valuation of damages adopted in this opinion, we remand *550 the case to the trial court to render a decision in accordance with this method of valuation, on the basis of the present record and of any additional evidence that the trial court in its discretion may allow. Moreover, we instruct the trial court to consider and rule on the claim for the shock and emotional distress that the tort victim actually suffered, irrespective of the percentage chance of survival, upon learning that the Department's health care providers failed to inform him of his beginning stage of cancer at a time when something possibly could have been done to avoid the consequences.
For these reasons, the judgment of the court of appeal is set aside, and the case is remanded to the district court for further proceedings in accordance with this opinion.
MARCUS and VICTORY, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
I dissent from the majority opinion. I agree with the method used by the court of appeal in measuring damages recoverable for the loss of a chance of survival. Acordingly, I respectfully dissent.
VICTORY, Justice, Dissenting.
I cannot agree with: (1) this Court's adoption in Hastings v. Baton Rouge General Hospital, 498 So.2d 713 (La.1986), of the lost chance of survival doctrine as a part of Louisiana's medical malpractice law; or (2) with the majority's approach in the instant case in evaluating damages in lost chance of survival cases.
My disagreement with the Court's adoption of the lost chance of survival doctrine is both pragmatic and theoretical. From a pragmatic standpoint, the doctrine yields unfair results. How the doctrine of lost chance results in erroneous and inequitable outcomes is illustrated by the Court of Appeals of Maryland:
Because loss of chance of recovery is based on statistical probabilities, it might be appropriate to examine the statistical probabilities of achieving a "just" result with loss of chance damages ... To compare the two rules, assume a hypothetical group of 99 cancer patients, each of whom would have had a 331/3% chance of survival. Each received negligent medical care, and all 99 dies. Traditional tort law would deny recovery in all 99 cases because each patient had less than a 50% chance of recovery and the probable cause of death was the preexisting cancer not the negligence. Statistically, had all 99 received proper treatment, 33 would have lived and 66 would have died; so the traditional rule would have statistically produced 33 errors by denying recovery to all 99.
The lost chance rule would allow all 99 patients to recover, but each would recover 331/3% of the normal value of the case. Again, with proper care 33 patients would have survived. Thus, the 33 patients who statistically would have survived with proper care would receive only one-third of the appropriate recovery, while the 66 patients who dies as a result of the preexisting condition, not the negligence, would be overcompensated by one-third. The loss of chance rule would have produced errors in all 99 cases. [Emphasis added.]
Fennell v. Southern Maryland Hospital (1990), 320 Md. 776, 580 A.2d 206, 212-13 (declining to adopt the doctrine of loss of chance of survival [in Maryland]).
From a theoretical standpoint, the doctrine has no basis in Louisiana law. The sources of law in Louisiana are well definedthey are legislation and custom. La.Civ.Code art. 1. Legislation is "a solemn expression of legislative will." La.Civ.Code art. 2. Custom results from practice repeated for a long time and generally accepted as having acquired the force of law. La.Civ.Code art. 3. In Louisiana, as in all codified systems, legislation is the superior source of law, and under no circumstances may custom abrogate legislation. La.Civ.Code art. 1, comment (a); La.Civ.Code art. 3. Courts may fashion equitable remedies only when no rule for a particular situation can be derived from legislation or custom. La.Civ.Code art. 4.
Louisiana R.S. 9:2794A(3) provides that the plaintiff in medical malpractice actions has the burden of proving by a preponderance of the evidence that as a proximate result of the lack of knowledge or skill or *551 failure to exercise the degree of care required, the plaintiff suffered injuries that would not otherwise have been incurred. Despite this direct expression of legislative will, this Court has decided that the plaintiff may win merely by showing that the negligence was a substantial factor in depriving the patient of some chance of life or recovery. The negligence need not be the only causative factor. It is enough that it increased the harm to the patient. Pfiffner v. Correa, 94-0924, 94-0963, 94-0992, p. 2 (La. 10/17/94), 643 So.2d 1228, 1230; Hastings, 498 So.2d at 720. Therefore, the plaintiff does not have to shoulder the burden of proving that the patient would have survived if properly treated. He need only demonstrate that the decedent had a chance of survival or recovery which was denied him as a result of the defendant's negligence. Pfiffner, 94-0924, 94-0963, 94-0992, p. 2, 643 So.2d at 1230; Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1278 (La.1991).
In my view, the adoption of the lost chance of survival doctrine by this Court in Hastings, and the accompanying relaxed burden of proof in medical malpractice cases, flies in the face of a clear expression of legislative will and is an improper extension of judicial authority in violation of La.Civ. Code art. 4.
Now the Court adopts a method of valuation that will allow many judgments rendered under the doctrine virtually unreviewable. The modern procedural trend is to require the fact-finder to provide more information in reaching its verdict. See, e.g., La.Code Civ.P. arts. 1812-13 (regarding submission of special verdicts and interrogatories to the jury); and La.Code Civ.P. art. 1917 (regarding request for written reasons for judgment from the court in nonjury trials). The majority's approach ignores this trend and allows the jury to simply arrive at a damage figure without properly explaining the basis of the figure. This "rabbit-out-of-the-hat" approach will be virtually impossible to review on appeal under the manifest error standard. The reviewing court will have little idea of what chance of survival the jury determined was lost, thus little basis to determine if the jury was manifestly erroneous.
The "percentage probability test" proposed by Professor Joseph H. King, Jr., in his article entitled, Causation, Valuation, and Chance in Personal Injury Tort Cases Involving Preexisting Conditions and Future Consequences, 90 Yale L.J. 1353 (1981), is a much fairer and much more precise test than that adopted by the majority. It was used by Judge Norris in his opinion in the Court of Appeal in this case. Smith v. State of Louisiana, Department of Health and Hospitals, 26,280 (La.App.2d Cir. 12/9/94), 647 So.2d 653. Under this test, damages in lost chance of survival cases are measured according to the "percentage probability by which defendant's tortious conduct diminished the likelihood of achieving some more favorable result." King, supra at 1382. To illustrate, Professor King states:
[C]onsider a patient who suffers a heart attack and dies as a result. Assume that the defendant-physician negligently misdiagnosed the patient's condition, but that the patient would have had only a 40% chance of survival even with a timely diagnosis and proper care. Regardless of whether it could be said that the defendant caused the decedent's death, he caused the loss of a chance, and that chance-interest should be completely redressed in its own right. Under the proposed rule, the plaintiff's compensation for the loss of the victim's chance of surviving the heart attack would be 40% of the compensable value of the victim's life had he survived (including what his earning capacity would otherwise have been in the years following death). The value placed on the patient's life would reflect such factors as his age, health, and earning potential, including the fact that he had suffered the heart attack and the assumption that he survived it. The 40% computation would be applied to that base figure.
King, supra at 1382.
This approach is much more sensible and fair than that proposed by the majority because it insures that the damages awarded redress the actual injury, which is the decreased chance of survival or recovery, not the actual death. Martin, 582 So.2d at 1278; Hastings, 498 So.2d at 720; Perez v. Las *552 Vegas Medical Center, 107 Nev. 1, 805 P.2d 589, 592 (1991). A majority of our sister states have adopted the "percentage probability test." See, e.g., Wollen v. DePaul Health Center, 828 S.W.2d 681, 685 (Mo.1992) (In recognizing the possibility of a lost chance cause of action, the Missouri Supreme Court stated, "damages can only be expressed by multiplying the lost life or limb by the chance of recovery lost."); Perez, 805 P.2d at 592 ("[D]amages are to be discounted to the extent that a preexisting condition likely contributed to the death."); DeBurkarte v. Louvar, 393 N.W.2d 131, 136 (Iowa 1986) ("We believe the better approach is to allow recovery, but only for the lost chance of survival."); Herskovits v. Group Health Cooperative, 99 Wash.2d 609, 664 P.2d 474, 479 (Wash.1983) ("Causing reduction of the opportunity to recover [loss of chance] by one's negligence, however, does not necessitate a total recovery against the negligent party for all damages caused by the victim's death."). I would follow the lead of these states and utilize this formula for calculating damages in lost chance of survival cases: Lost Chance of Survival Damages = (the percent of chance of survival lost due to negligence) multiplied by (the total amount of damages which are ordinarily allowed in wrongful death actions).
The majority claims this approach is too mechanistic. Yet, statistics and mathematics play important roles in many aspects of Louisiana personal injury litigation. For example, our law of comparative fault allows juries to award a sum of damages after evaluating and considering the evidence presented. Thereafter, the jury must allocate percentages of fault to both the plaintiff and defendant, if they are both at fault. These percentages are then applied to the total damages stated by the jury to reach the amount of damages actually awarded to the plaintiff. La.Civ.Code art. 2324; La.Code Civ.P. art. 1812. Neither this task nor the "percentage probability test" should be considered too mechanistic.
In sum, the majority rejects a fair and logical test accepted by almost all states that allow recovery for loss chance of survival in favor of a test used by almost no state and which will make many judgments unreviewable. I respectfully dissent.
NOTES
[*] Chief Judge Morris A. Lottinger, Jr., Court of Appeal, First Circuit, sitting by assignment in place of former Justice James L. Dennis.

Kimball, J., not on panel. Rule IV, Part 2, § 3.
[1] The experts contrasted "extensive" stage with "limited" stage, in which the cancer is limited to one side of the thorax or treatable by one radiation point. Smith apparently was in the "limited" stage at the time of the first x-ray.
[2] While plaintiffs' petition asserts the unconstitutionality of the cap on medical malpractice damages set forth in La.Rev.Stat. 40:1299.39, this issue was bifurcated by joint agreement between the parties. This issue is thus not before us.
[3] From this testimony, the court concluded that a range of seven to twelve percent encompasses most of the experts' estimates.
[4] The court fixed the total damages as follows:

Wrongful death damages $450,000
 (one-third each)
Funeral expenses 4,004
Future lost earnings and value of
 household services 250,343
Survival action damages 60,000
 ________
 $764,347

[5] The pre-existing condition causes the conceptual problem. The jury should focus on the damages that the defendant causedthe loss of a chance of avoiding a death that might not have occurred if the health care provider had performed properly. The court should instruct the jury to determine the amount of damages for this specific loss on the basis of all the evidence.
[6] Contrast Pfiffner v. Correa, 94-0992 (La. 10/17/94), 643 So.2d 1228, in which the plaintiffs failed to prove there was any chance of survival at the time of the alleged malpractice.
[7] This decision only addresses damages in a medical malpractice case and does not consider damages for loss of a chance of survival in cases against other types of tortfeasors. See Hardy v. Southwestern Bell Tel. Co., 910 P.2d 1024 (Okla. 1996). That decision is left for another day.
[8] While the loss of a chance of survival doctrine has spawned a plethora of commentary and has been recognized by a majority of the states, John D. Hodson, Medical Malpractice: "Loss of Chance" Casualty, 54 A.L.R.4th 10 (1987); Martin J. McMahon, Medical Malpractice: Measure and Elements of Damages in Actions Based on Loss of Chance, 81 A.L.R.4th 485 (1987), little attention has been given to the complex issue we focus on today of the appropriate methodology for calculating the value of the loss of a chance of survival.
[9] Valuation of the loss of a chance of survival in this medical malpractice case is similar to the valuation of the loss of a chance of recovery by judgment or settlement in a legal malpractice action in which a lawyer lets a case prescribe and the tort victim sues the lawyer for malpractice. In the early cases, a plaintiff could only recover by trying a "case-within-a-case"that is, by proving that he or she would have prevailed on the underlying cause of action. If not, the plaintiff could not recover. (The parallel in the medical malpractice area is the jurisprudence that rejects entirely the loss of a chance of survival doctrine.) Recognizing the unfairness to tort victims who had a chance of recovery and lost it because of legal malpractice, the courts, including this one, modified the case-within-a-case doctrine somewhat by shifting the burden of proof to the negligent attorney. See Jenkins v. St. Paul Fire & Marine Ins. Co., 422 So.2d 1109 (La. 1982). Even under this approach, however, the jury must engage in a pretend exercise of measuring damages based on events that never in reality occurred or can occur.

The preferable approach in legal malpractice cases (although not yet adopted by a holding of this court) is to let the jury value the lost chance of recovery based on the value of the claim before prescription. See Jenkins v. St. Paul Fire & Marine Ins. Co., 422 So.2d 1109, 1114-15 (La.1982) (Dennis, J., dissenting). Indeed, one commentator criticized the case-within-a-case approach as "speculative" and suggested it would be preferable just to let the jury value the lost chance of recovery. Richard G. Coggin, Attorney Negligence ... A Suit Within a Suit, 60 W.Va.L.Rev. 225, 234-35 (1965). As this commentator aptly noted, "[t]he major objection which has been raised to [the case-within-a-case] mode of proof is that it will require the present jury to `speculate' as to the amount of damages which the first jury, had it heard the case, would have assessed, thus bringing the question within the familiar `rule of certainty'" which permits recovery of only damages that are susceptible of determination with a reasonable degree of certainty. Id. at 234. Continuing, this commentator made the suggestion that the preferable methodology would be to present all relevant issues to the jury for its exclusive determination and noted that "[n]o substantial right of the defendant would be violated by such a course of action." Id. at 235. This commentator further noted that this approach would be consistent with the policy that "no wrong shall be without a remedy." Id.
[10] Evidence of loss of support, loss of love and affection and other wrongful death damages is relevant, but not mathematically determinative, in loss of a chance of survival cases, as is evidence of the percentage chance of survival at the time of the malpractice. The plaintiff may also present evidence of, and argue, other factors to the jury, such as that a ten percent chance of survival may be more significant when reduced from ten percent to zero than when reduced from forty to thirty percent. The jury may also consider such factors as that the victim, although not likely to survive, would have lived longer but for the malpractice.