hBROWN, J.,
Dissenting.
The jury found that plaintiffs established the standard of care and that Dr. Giddens failed to meet that standard. The second part of the jury’s verdict states that this failure did not cause Mrs. Lovelace’s death. Plaintiffs appealed the judgment. Defendant did not answer the appeal seeking to overturn the finding of negligence.

Lost Chance of Survival.

In Smith v. State, 95-0038 (La.06/25/96), 676 So.2d 543, the supreme court recognized the right to recover damages for the lost chance of survival and set forth the method of valuation.[1] In Smith, a factually similar case,[2] the court found that a tort-caused loss of any degree is compen-sable in damages and that a lost chance of survival is “a distinct compensable injury ... to be distinguished from the loss of life in wrongful death cases.” Smith, 676 So.2d at 547.
In Smith, the supreme court said “that the loss of a less-than-even chance of survival is a distinct injury compensable as general damages which cannot be calculated with mathematical certainty.” Id. at 548. Thus, the valuation of a lost chance of survival claim by taking a percentage of the value of a wrongful death claim was rejected. The Smith court further stated that the jury should consider “an abundance of evidence and factors, including (but not limited to) evidence of percentages _” Id. at 549.
| ¡Defendant testified that at her checkup Mrs. Lovelace did not appear to be ill. Dr. Flenniken, a defense expert, stated that Mrs. Lovelace’s illness was progressive. Dr. Lieber, a defense expert and defendant’s partner, testified that the cause of Mrs. Lovelace’s death was complications arising after she was hospitalized. Dr. Haynie, a defense expert, testified that if he had read the x-rays he would have hospitalized Mrs.' Lovelace immediately, but not in intensive care. Obviously, if Mrs. Lovelace had been hospitalized when she was not yet disoriented and still strong, her chances for recovery, even if for a short time, were better.
Dr. Kaough, a defense expert, when asked if the one day delay could have made a difference in the final outcome, testified, “I think that’s very unknown, because nobody knows what the etiology is *658 of her condition,” and further answering, Dr. Kaough said that it would be impossible to say. Dr. Haynie, also testified, “I think it’s more likely that she wouldn’t have survived it. I can’t tell you for sure what would have happened.”
Dr. Flenniken; another defense expert, explained, “ It’s hard for me to tell you the exact percentages that she would have had of living and walking out of that hospital if she had been hospitalized that moment he saw her versus twenty-four hours later. I think the difference is small. There is, as far as this illness is concerned, a chance she would have made it. That chance would have been in my opinion small. I can’t yive you an exact percentaye ... [Such lung conditions] are generally progressive. What usually happens is they get another infection ... It gets harder and harder each time ... Apparently, this lady was an active eighty years old prior to this, able to drive a ear. Unfortunately ... if you get them over |athe infection, have more shortness of breath, require oxygen ... are unable to be active.... ”
Dr. Whitley, also a defense expert, said, “I think they (chances of survival) would be very low .... I don’t think she is going to survive. We have got to treat her and see what we can do.” Dr. Lieber, defendant’s partner and expert, cogently answered, “[L]et me tell you your chances are going to be fifty-fifty. She had a possibility of survival of fifty percent and possibility of death of fifty percent. It’s either going to happen or not ... Either I’m going to drop dead or not, nobody knows.”
Finally, Dr. Schoenberger, plaintiffs’ expert, testified that defendant’s negligence caused or contributed to Mrs. Lovelace’s death. On cross, however, he could not give an opinion on the percentage of harm caused by the delay in hospitalization, but explained that what he was saying is that she needed hospitalization and care.
Any lost chance due to negligence is compensable in damages. Its value is subjective, as is any other general damage award. See Smith, supra. The fact that physicians cannot place a percentage does not mean a plaintiff loses, it only makes the jury’s job more difficult. Even if the quality of Mrs. Lovelace’s life lessened, as suggested by Dr. Flenniken, there is value in the southern custom of putting things in order before the final illness by expressing feelings, family history or simply saying goodby.
Before NORRIS, C.J., and STEWART, BROWN, GASKINS, JJ„ and PRICE, J. Pro Tern.

. The supreme court reversed this court [Smith v. State, 26,280 (La.App.2d Cir.12/09/94), 647 So.2d 653], insofar as the method used by this court to value the lost chance (requiring a percentage of the value of the wrongful death claim). That the experts in the present case could not honestly state a percentage demonstrates the wisdom of the supreme court's method.

. In Smith, x-rays showed a fast-acting cancer. The patient was released without being told of the findings. When the patient returned it was too late. The hospital admitted negligence but said the patient would have died anyway.