ON REHEARING
LBROWN, J.
Because Mrs. Lovelace did not appear ill at her annual checkup, Dr. Giddens decided to wait until the results of other tests were in before looking at his elderly patient’s x-rays. If Dr. Giddens had looked at the x-rays, however, he would have immediately hospitalized her for bilateral pneumonia. Approximately 20 to 24 hours later, Mrs. Lovelace became weak and disoriented. At that time, she was hospitalized and aggressively treated.[1] Nonetheless, she died six days later at the hospital.
A jury concluded that Dr. Giddens’ omission which resulted in a delay in diagnosing Mrs. Lovelace’s life-threatening illness was medical negligence. The jury then found that Mrs. Lovelace would have died even if there had been no delay and therefore, Dr. Giddens’ fault caused no damages. With this we disagree.
Obviously, Mrs. Lovelace had a pre-ex-isting illness not caused by Dr. Giddens; however, a physician’s failure or delay in diagnosing a serious illness could in some circumstances diminish or destroy the patient’s opportunity or chance for a cure or recovery. A wrongful death claim requires proof by a preponderance of the *659 evidence, or more than fifty percent, that the doctor’s malpractice caused the patient’s death. Many patients, however, live when their chances were initially believed to be less than even. The harshness of this traditional standard of proof has been recognized as unfair when medical fault takes away an opportunity to survive. The doctrine of a lost chance of survival takes into account this real consequence of physician fault and seeks to protect the possibility for a favorable outcome, even where the patient’s chances of recovery were initially believed to be less than fifty percent.
In Smith v. State, 95-0088 (La.06/25/96), 676 So.2d 543, the supreme court recognized the right to recover damages for any lost chance of survival and set forth Lthe method of valuation. In Smith, x-rays showed a fast-acting cancer. The patient was released without being told of the findings. When the patient returned a year later, it was too late. The hospital admitted negligence but said that the patient would have died anyway. The Smith court found that a tort-caused lost chance of survival of any degree is “a distinct compensable injury ... to be distinguished from the loss of life in wrongful death cases.” Smith, 676 So.2d at 547.
In Smith, the supreme court set forth the prerequisites to prove the loss of a less-than-fifty percent chance of survival. Plaintiff must show by a preponderance that: (1) the victim had a chance to survive at the time of the professional negligence; (2) the tortfeasor’s action or inaction deprived the victim of all or part of that chance; and, (3) the value of that lost chance.
Defendant testified that at her checkup, Mrs. Lovelace did not appear to be ill. Dr. Flenniken, a defense expert, stated that Mrs. Lovelace’s illness was progressive, and that “there (was), as far as this illness (was) concerned, a chance she would have made it.” Dr. Lieber, a defense expert and defendant’s partner, testified that the cause of Mrs. Lovelace’s death was complications arising after she was hospitalized, and as for her chances of survival, that “either (a person is) going to drop dead or not, nobody knows.” Dr. Haynie, a defense expert, testified that if he had read the x-rays he would have hospitalized Mrs. Lovelace immediately, but not in intensive care. Obviously, if defendant had read the x-rays in his possession while Mrs. Lovelace was in his office, he would have hospitalized her when she was not yet disoriented and still strong. Instead, Mrs. Lovelace was hospitalized 20-24 hours later after she had become weak and disoriented. No expert would say absolutely that Mrs. Lovelace would not have survived if hospitalized before she became debilitated and confused. Under these circumstances, plaintiffs carried their burden of proof that survival was possible had Mrs. Lovelace been properly treated a day earlier. The jury was clearly wrong in concluding otherwise.
|sThe most difficult aspect of this case is in valuing the loss. Our supreme court in Smith rejected the percentage approach in favor of allowing the trier of fact to utilize its perception of the patient’s loss and to value it according to its experience, judgment and common sense.
In Smith, the supreme court noted that the loss of a less-than-even chance of survival is a distinct injury compensable as general damages which cannot be calculated with mathematical certainty. Id. at 548. Thus, recognizing the futility of seeking an illusory percentage of the value of a wrongful death claim, the court left it up to the factfinder to set a general damage award based upon all the evidence. The advantage of this method of valuation is its simplicity. Presentation of statistical evidence as well as coercing physicians to pull percentages out of the hat is unnecessary.
Because the jury was clearly wrong in awarding no damages for Mrs. Lovelace’s lost chance, we are constrained to do so based on the evidence. Beckham v. St. Paul Fire and Marine Ins. Company, 614 So.2d 760 (La.App. 2d Cir.1993). As noted *660 above, any lost chance of survival due to negligence is compensable in damages and its value is subjective, as is any other general damage award. See Smith, supra.
According to the evidence and Dr. Giddens’ records, Mrs. Lovelace was an active 82-year-old lady who drove her own automobile. On the day of her annual checkup, she and her niece were out eating yogurt. Based on the record, we conclude that Mrs. Lovelace’s lost chance of survival should be valued at $125,000.

CONCLUSION

For the reasons stated herein:
IT IS ORDERED, ADJUDGED and DECREED that the trial court’s judgment is REVERSED and that judgment be entered in favor of plaintiffsjappellants4 in the sum of $125,000. Costs here and below are taxed to defendant-appellee.
REVERSED AND RENDERED.
STEWART, J., concurs.
GASKINS, J., dissents for reasons expressed in original opinion.
PRICE, J., (Pro Tem), dissents with written reasons.

. A course of aggressive treatment toward a full recovery was begun as opposed to merely addressing Mrs. Lovelace's pain and making her comfortable.