1MURRAY, Judge.
Defendants, Orleans Parish Criminal Sheriff Charles Foti and his employee, Mr. Christopher Sampey, appeal the trial court’s judgment in favor of the plaintiff, Shawn Jones [1], awarding her damages in a wrongful death action. For the reasons that follow, we affirm.

FACTS

Darryl Jones, the father of plaintiff Shawn Jones, died of cardiac arrest on March 13, 1987, at Charity Hospital, shortly after being transported there by ambulance from the Orleans Parish Prison, where he had been an inmate. Mr. Jones, who was complaining of chest pains and shortness of breath, was evaluated by defendant Sampey, a corpsman at the jail, at approximately 7:05 a. m. on March 13. Mr. Sampey concluded that Mr. Jones’ pain was probably musculo-skeletal, and prescribed Tylenol and twenty-four hours of bed rest, following which Mr. Jones returned to his cell. Then, at 8:55 a.m., a deputy found Mr. Jones non-responsive and seizing in his cell. Mr. Sampey and Dr. Alper, the physician on | ¡fluty at the prison, were called. Dr. Alper ordered that Mr. Jones be transferred immediately to Charity Hospital. Mr. Jones was then placed on a gurney and taken by elevator from the eighth floor down to an ambulance that was parked at the jail for the purpose of transporting inmates. According to Mr. Sampey, Mr. Jones was breathing and had a faint pulse in the elevator. Mr. Sampey and another corpsman, Mr. Darensburg, accompanied Mr. Jones in the ambulance; Dr. Alper did not. En route to the hospital, Mr. Jones went into cardiac arrest. The two corpsmen began CPR, and while Mr. Sampey was performing the chest compressions, Mr. Jones vomited. There is conflicting evidence, as to whether Mr. Jones’ airway was then cleared, and specifically as to whether he was “bagged” or ventilated during transport. Mr. Jones arrived at Charity Hospital in full cardiac arrest, with no pulse or respiration. Attempts to revive him were unsuccessful, and he was pronounced dead at 9:38 a.m.

PROCEEDINGS BELOW

The instant wrongful death suit was filed on March 11, 1988, by Connie Johnson, on behalf of her then minor child, Shawn Jones, and by Clara Jones, mother of the decedent. After Shawn Jones became a major, she was substituted as party plaintiff and Connie Johnson was removed.[2] Also, on September 17, 2001, the trial court maintained the defendants’ exception of no right of action as to plaintiff Clara Jones and dismissed her claims with prejudice.[3]
LThe matter was tried without a jury on March 25, 2002. The witnesses included the original plaintiffs (Shawn Jones, Connie Johnson, and Clara Jones), Mr. Sam-pey, Dr. Alper, and two medical experts, Dr. Kevin White and Dr. Gregory Vorhoff. On June 6, 2002, the trial court rendered *1053 judgment awarding the plaintiff $85,000 in damages against both defendants. In written reasons for judgment, the trial court stated that the defendants’ liability was based upon the negligent failure to administer proper treatment to Mr. Jones when he went into cardiac arrest in the ambulance, which caused him to lose a chance for survival. Turning to damages, the court noted that the award did not include any amount for the pain and suffering of Mr. Jones (the survival action), but was entirely based upon the relationship between Mr. Jones and his daughter, Shawn.
The defendants filed a suspensive appeal, asserting three assignments of error: (1) The trial court committed legal error by judging the conduct of the two corpsmen who accompanied Mr. Jones in the ambulance according to an ordinary negligence standard; (2) The trial court committed manifest error by concluding that the fault of defendants caused Mr. Jones to lose a chance of survival; and (3) The trial court abused its discretion by awarding an excessive amount of damages.

DISCUSSION

I. The Standard of Care
The defendants contend that the trial court applied the wrong standard of care. in assessing the fault of the two corpsmen who accompanied Mr. Jones in the ambulance. The trial court found that the corpsmen were negligent in that they did I ¿not properly perform CPR, which negligence decreased Mr. Jones’ chance of survival. The defendants argue that pursuant to La. R.S. 40:1235(A), as in effect at the time of Mr. Jones’ death in 1987[4], the two corpsman are immune from liability, except for acts or omissions that are intentionally designed to harm or are grossly negligent. R.S. 40:1235(A)(1) provides that medical technicians who render emergency medical care to a person “while in the performance of [their] medical duties and following the instructions of a physician” cannot be held individually liable to that person for civil damages as a result of acts or omissions in rendering said care, “except for acts or omissions intentionally designed to harm, or for grossly negligent acts or omissions which result in harm to such person.” Part 2 of the statute (40:1235(A)(2)) extends the immunity granted by Part 1 to parish governing authorities, police departments, sheriffs offices and other public agencies engaged in rendering emergency medical services, and to their insurers.
In response to the defendants’ argument, the plaintiff contends that the immunity statute does not apply because corpsman Sampey was not “following the instructions of a physician” within the terms of the statute. Alternatively, the plaintiff asserts that should corpsman Sampey be found to have been acting under the instruction of Dr. Alper, the corpsman’s failure to clear Mr. Jones’ airway after he vomited during CPR nevertheless constitutes “gross negligence.” Because the defendants’ argument regarding immunity is being asserted for the first time on appeal, the trial court did not consider either of these issues.
|fiWith regard to these issues, there is no evidence of any communication between Dr. Alper and Mr. Sampey after the corpsman left Mr. Jones’ cell with the gurney. Dr. Alper testified that, upon arriving at the cell and examining Mr. Jones, he told corpsman Sampey to give him oxygen, put him on the gurney and get him to Charity Hospital. An assessment form filled out by Dr. Alper after he returned to his office also reflects that he instructed *1054 the corpsman to give oxygen to Mr. Jones. Mr. Sampey testified, however, that he never administered oxygen, either while Mr. Jones was on the gurney or while he was in the ambulance.
In view of these facts, we cannot find that Mr. Sampey was “following the instructions of a physician” within the terms of the immunity statute when he failed to clear Mr. Jones’ airway. In Ambrose v. New Orleans Police Department, 627 So.2d 238, 242-43 (La.App. 4th Cir. 1993), reversed on other grounds, 93-3099, 3110, 3112 (La.7/5/94), 639 So.2d 216, this court held that an emergency room technician was considered to have been following the instructions of a physician, pursuant to R.S. 40:1235(A), whether he had received those instructions via electronic means or he was following a “protocol,” defined as a prescribed set of instructions established by physicians of the Orleans Parish Medical Society. In the instant case, there was no evidence concerning protocols. Moreover, Mr. Sampey clearly did not receive any instructions from Dr. Alper other than to transport Mr. Jones to the hospital and to give him oxygen. As the corpsman admittedly did not administer oxygen, he failed to follow the physician’s instructions. Under these circumstances, we do not believe the gross negligence | ^standard of the immunity statute applies. Alternatively, even if we were to find that Mr. Sampey was following the physician’s instructions merely by transporting Mr. Jones to the hospital, we would hold that the corpsman’s failure to establish an airway during CPR and failure to administer oxygen in direct contravention of the physician’s orders constituted gross negligence.
2. Causation
The defendants argue that the trial court’s conclusion that Mr. Sampey’s negligence caused Mr. Jones to lose a chance of survival is manifestly erroneous. However, we find the trial court’s conclusion to be reasonable in light of the evidence.
To reach its conclusion, the trial court had to resolve two conflicts in the evidence. First, the trial court made the factual determination that Mr. Jones was not ventilated, nor was his airway cleared after he vomited in the ambulance. The court based this determination upon the Charity Hospital records, which directly contradicted Mr. Sampey’s testimony about what occurred in the ambulance. Although Mr. Sampey testified otherwise, the written report contained in the hospital records, which the trial court noted would necessarily reflect the information given to the hospital attendant by the corpsmen, states unequivocally that Mr. Jones was not ventilated in the ambulance. Moreover, the record states that Mr. Jones had vomitus in his mouth and nares when he arrived at the hospital. In view of the evidence, we cannot say that the trial court’s decision to base its | factual determination on the Charity Hospital record, thereby discrediting the testimony of corpsman Sampey, a defendant, constitutes manifest error.
After making the factual determination that Mr. Jones’ airway was not cleared in the ambulance, the trial court then had to resolve the conflict between the testimony of two cardiologists as to whether the failure to keep the airway clear caused Mr. Jones to lose a chance of survival. Dr. Kevin White, testifying for the plaintiff, stated that if basic life support (CPR) is initiated within four minutes of cardiac arrest, and advanced cardiac life support (defibrillator paddles, IV equipment) is utilized within eight minutes, the patient has a statistical chance of survival. Dr. White testified that CPR denotes the establishment of an airway, chest compressions, and replacement of oxygen. According to *1055 the prison and hospital records, the ambulance departed for Charity at approximately 9:05 a.m., and it arrived at 9:10 a.m. According to Mr. Sampey, Mr. Jones “coded” (went into cardiac arrest) within thirty seconds to one minute of the time he was placed in the ambulance. Therefore, the trial court found that the failure to properly perform CPR in the ambulance caused Mr. Jones to lose a chance of survival.
In arriving at this conclusion, the trial court discounted the testimony of Dr. Gregory Vorhoff, who opined that the actions of Corpsman Sampey in the ambulance were reasonable. However, as the trial court noted, Dr. Vorhoffs opinion was based on the testimony of Mr. Sampey that an Ambu bag (means of ventilation) was used on Mr. Jones in the ambulance, and his airway was cleaned |sout after he vomited. Both these statements were found not credible by the trial court because they were contradicted by the Charity Hospital written record.
Considering the trial court’s decision according to the manifest error standard, we do not find that court’s factual determinations to be unreasonable in view of the evidence. Indeed, we find more than sufficient support in the record for the trial court’s conclusion that the defendants’ negligence caused Mr. Jones to lose a chance of survival.
In addition to the corpsmen’s failure to ventilate Mr. Jones in the ambulance, cited by the trial court, it would have been reasonable for the court to have found that the failure to further investigate Mr. Jones’ symptoms at 7:05 a.m. as indicative of a heart attack was negligence which caused him to lose a chance of survival. In that .instance, the trial court accepted Dr. Vorhoffs testimony that given Mr. Jones’ age, medical history and normal vital signs, it was reasonable for the corpsman to administer Tylenol and do nothing further. Dr. Vorhoffs opinion, however, differed from that of Dr. White. Dr. "White testified that because Mr. Jones exhibited several classic risk factors for a heart attack and also was complaining of shortness of breath and sharp chest pains of thirty minutes in duration, he should have been examined by a doctor, transported to a hospital and/or given an EKG at 7:05 a.m. We also note from the prison records that Dr. Alper, who arrived at the facility at approximately 8:05 a.m., was not informed of Mr. Jones’ earlier complaints, nor was he sent to check on Mr. Jones at that time. Although the trial court chose to accept the opinion of Dr. Vorhoff that the failure 19of the prison staff to do more for Mr. Jones before he was found collapsed in his cell at 8:55 a.m. was not negligence, the opposite conclusion also would have .been reasonable given the evidence. There is also ample evidence to support the conclusion that had Mr. Jones received the proper medical care at 7:05 a.m., he probably would have survived.
Accordingly, we find no manifest error in the trial court’s conclusion that the defendants’ negligence caused Mr. Jones to lose a chance of survival.
3. Quantum
Defendants argue that in assessing $85,000 in general damages, the trial court failed to consider the percentage chance of survival that was lost, specifically because no evidence was introduced by the plaintiff as to the specific numerical percentage. Alternatively, the defendants contend that the amount awarded would be excessive even as a wrongful death award.
The case relied upon by defendants, Smith v. State Dept. of Health & Hospitals, 95-0038 (La.6/25/96), 676 So.2d 543, does not support their contention that specific percentages must be established in *1056 a case involving the loss of a chance of survival; rather, it indicates that specific percentages, if introduced as evidence, must be considered by the trier of fact along with evidence such as loss of support, loss of love and affection, and any other evidence bearing on the value of the lost chance of survival. Id. at p. 11, 676 So.2d at 549. The Supreme Court in Smith makes it clear that the loss of any chance of survival by a tort victim is incompensable. Id. at pp. 6-7, 676 So.2d at 546-47. As for determining quantum, the Court states:
[T]he method we adopt today in this decision, is for the factfinder — -judge or jury — to focus on the chance of survival lost on account of [tortious fault] as a distinct compensable injury and to value the lost chance as a lump sum award based on all the evidence in the record, as is done for any other item of general damages.
Id. at p. 7, 676 So.2d 547.
Accordingly, we do not find that the failure to quantify the percentage of the lost chance of survival or to correlate the amount of damages to a specific percentage is reversible error. The trial court has great, even vast, discretion in determining the amount of general damages, and its award may not be disturbed absent an abuse of that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). In the instant case, the trial court found that Shawn Jones, who was eleven years old when her father died, stayed with him on weekends at his mother’s house before he was incarcerated and enjoyed such activities as going to the movies and the park with him. Although she did not receive regular child support from her father, he did give Shawn money, clothes and presents. During the six months he was incarcerated before his death, Mr. Jones called his daughter four to six times per month and sent her cards and letters, although she was not allowed to visit him in jail. Shawn testified that she missed her father while growing up and that she visited his gravesite; Shawn’s mother testified that Shawn still had difficulty accepting her father’s death.
Based on this evidence, we do not find the amount of general damages awarded by the trial court to be an abuse of discretion.
I ^CONCLUSION
For the reasons stated, we affirm the judgment of the trial court.
AFFIRMED.

. Although referred to in the district court’s judgment and in the case caption as “Shawn Johnson,” the plaintiff's correct name, “Shawn Jones,” was substituted as party plaintiff by order of the district court dated March 12, 2001.

. See the district court's order dated March 12, 2001.

.The trial court dismissed the claims of Clara Jones again in its June 6, 2002, judgment on the merits, stating in written reasons that under La. Civil Code art. 2315.2, which was in effect at the time of Mr. Jones’ death, the decedent's mother has no right to bring a wrongful death action when the decedent is survived by a child.

. La. R.S. 40:1235 was recodified without material change as La. R.S. 40:1233 in 1997.