43 So.3d 239 (2010)
Lena HEBERT, Spouse of Morgan Cephas Hebert, Sr. (Deceased), Diane H. Melvin and Morgan Hebert, Jr.
v.
PLAQUEMINE CARING, L.L.C.
No. 2007 CA 2243.
Court of Appeal of Louisiana, First Circuit.
June 16, 2010.
Rehearing Denied July 22, 2010.
*240 Daniel E. Broussard, Jr., Alexandria, Louisiana, for Plaintiffs/Appellants, Lena Hebert, Diane H. Melvin, and Morgan Hebert, Jr.
Deborah A. Van Meter, Lorraine P. McInnis, Margaret Diamond, New Orleans, Louisiana, for Defendants/Appellees, Plaquemine Caring, L.L.C.
Before PETTIGREW, GAIDRY, McDONALD, McCLENDON, and WELCH, JJ.
McDONALD, J.
This is an appeal of a judgment granting an involuntary dismissal of plaintiffs' claims of lost chance of survival against defendant. After a thorough review, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
In July of 2001, Morgan Hebert suffered a fractured hip as a result of a fall in his home. He was admitted to American Legion Hospital in Crowley. Prior to surgery to correct the fracture, Mr. Hebert suffered cardiopulmonary arrest, and was subsequently placed on a ventilator to provide respiratory support. He was transferred to the intensive care unit of Our Lady of Lourdes Hospital in Lafayette for *241 observation and treatment, where he remained until October 8, 2001.
Upon leaving Our Lady of Lourdes, Mr. Hebert was discharged to Plaquemine Caring, L.L.C. (Plaquemine), a long-term care skilled nursing facility in Plaquemine. At the time of admission, Mr. Hebert was diagnosed with ventilator dependent status, chronic obstructive pulmonary disease, respiratory insufficiency, hypertension, diabetes, and sensation neuromuscular disease. He required a PEG tube (feeding tube) for nourishment. As a result of his ventilator-dependent status, Mr. Hebert was to be monitored regularly to insure that the ventilator was functioning properly.
On October 19, 2001, Mr. Hebert was found by members of his family to be nonresponsive and cold to the touch. The family notified Plaquemine's staff at once, and Mr. Hebert was pronounced dead as a result of respiratory failure, cerebrovascular accident, and cervical neuropathy.
Plaintiffs Lena Hebert, as surviving spouse, and Diane H. Melvin and Morgan Hebert, Jr., as children of Mr. Hebert, filed their petition against Plaquemine on January 21, 2003, alleging that the fault and negligence of Plaquemine's personnel proximally and solely caused the loss of Mr. Hebert's chance of survival prior to his death. Lena Hebert died before the matter went to trial.
The bench trial began on May 2, 2007. On May 3, 2007, the trial judge considered and granted Plaquemine's oral motion for involuntary dismissal, finding that plaintiffs had not established that a breach of the standard of care was a cause of Mr. Hebert's death. The judgment was signed on June 7, 2007. From this judgment, plaintiffs filed a motion and order for devolutive appeal on July 25, 2007.
On January 10, 2008, this Court issued a show cause order upon a finding that the trial court's signed judgment of June 7, 2007 was deficient due to lack of decretal language as required by La. C.C.P. articles 1911, 1917, and 1918. Subsequently, this court issued an interim order, remanding the appellate record to the trial court to be supplemented with a judgment with appropriate language.
On April 25, 2008, this matter was stayed as a result of Bankruptcy proceedings filed by Plaquemine in the United States Bankruptcy Court, Middle District of Louisiana (Chapter 11 Case number 08-10511). Plaintiffs filed for relief from the automatic stay to continue to prosecute their claims. This relief was granted by order of the Bankruptcy Court on June 12, 2009.

ASSIGNMENTS OF ERROR
Plaintiffs make the following assignments of error: 1) the trial court committed manifest error in granting Plaquemine's motion for involuntary dismissal; 2) the trial court erred in finding that plaintiffs did not show any right to relief as required by La. C.C.P. article 1672; and 3) the trial court erred as a matter of law in using a "medical certainty" evidentiary standard in weighing plaintiffs' evidence.
In cases of lost chance of survival, the manifest error standard of review applies. Under this standard, a factual finding cannot be set aside unless the appellate court finds the decision to be manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Transportation and Development, 617 So.2d 880, 882 (La.1993). In order to reverse the determination of the factfinder, the appellate court must review the record in its entirety and 1) find that a reasonable factual basis for the finding does not exist, and 2) further find that the record establishes that the factfinder *242 is clearly in error. The issue to be decided in the review is not whether the trier of fact was right or wrong, but whether the conclusion was reasonable given the entirety of the evidence presented. Id.

LAW AND ANALYSIS
Plaintiffs frame their allegations against Plaquemine in terms of a lost chance of Mr. Hebert's survival. In a lost chance of survival case, the plaintiff does not have to prove that the patient would have lived had proper treatment been given. Benefield v. Sibley, 43,317, p. 13 (La. App.2d Cir.7/9/08), 988 So.2d 279, p. 289, writs denied, 08-2162, 08-2210, 08-2247 (La.11/21/08), 996 So.2d 1107, 1108, citing Smith v. State through Department of Health and Human Resources Administration, 523 So.2d 815 (La.1988). However, the plaintiff does have the burden of establishing, by a preponderance of the evidence, that the defendant's conduct denied the patient a chance of survival that he or she had before the defendant's conduct. Id. To do this, the plaintiff must demonstrate that a chance of survival existed in the first place; if the patient had no chance of survival, there is nothing lost by the defendant's conduct, even if a breach occurs. See Alphonse v. Acadian Ambulance Services, Inc., 02-0773-76, p. 10 (La. App. 1st Cir.3/28/03), 844 So.2d 294, 300, writ denied 03-1086 (La.6/20/03), 847 So.2d 1240. Once the chance of survival is established, the plaintiff must then demonstrate that the established chance was lost due to the defendant's negligence. Benefield, 43,317 at p. 13, 988 So.2d at 289. The defendant's conduct need not be the only causative factor of the patient's death, but the factors must have increased the risk of harm. Hastings v. Baton Rouge General Hospital, 498 So.2d 713, 720 (La. 1986). There is a right to recover for lost chance of survival even in cases when the chance is a less-than-even chance due to a pre-existing condition. Smith v. State through Department of Health and Hospitals, 95-0038, p. 6 (La.6/25/96), 676 So.2d 543, 547.
The determinations of chance of survival and loss of that chance are given to the finder of fact in these cases. See Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1278 (La.1991). The supreme court has repeatedly explained that "to establish causation in a situation where the patient dies, the plaintiff need only prove that the defendant's malpractice resulted in the patient's loss of a chance of survival, and that the plaintiff need not shoulder the `unreasonable burden' of proving that the patient would have survived if properly treated." Martin at 1278. Where this conclusion is based on evaluations of witness credibility, the standard of review demands that great deference must be given to the factfinder's determinations. Benefield, 43,317 at p. 6, 988 So.2d at 286.
Plaintiffs offered the testimony of Dr. Louis Roddy. Dr. Roddy, who was tendered as an expert witness by plaintiffs and qualified as an expert in pulmonary medicine and ventilator patient care, testified that Mr. Hebert's vital signs, as taken by Plaquemine's staff, indicated that he was in distress in the hours leading up to his death. Dr. Roddy's expert opinion was that Plaquemine had breached the standard of care. The recordkeeping of the nursing and therapy staff at Plaquemine was a significant factor in Dr. Roddy's assessment. He cited numerous examples of inconsistencies in Mr. Hebert's chart, inconsistencies that were corroborated by members of the nursing staff in their sworn testimony. In Benefield, 43,317 at pp. 7-12, 988 So.2d at 286-89, a similar *243 lack of proper recordkeeping was deemed to be a breach of the standard of care.
Dr. Roddy also testified that the recordkeeping failures were a significant cause of loss of Mr. Hebert's chance of survival. In his opinion, the sudden changes in spontaneous respiratory rates reflected in Mr. Hebert's chart would have raised alarms in a vigilant staff that the patient was in respiratory distress. Due to the recordkeeping problems, however, a distinct pattern was never established that would have indicated a problem.
The plaintiff also called Dr. Luke Lee, a physician who treated Mr. Hebert at Plaquemine, to question him as a fact witness. Dr. Lee, a specialist in occupational medicine, was then questioned by defense counsel on direct examination. During the course of this questioning, Dr. Lee was asked his opinion of a conclusion of the plaintiffs expert, Dr. Roddy. Plaintiffs counsel objected because Dr. Lee had not been qualified as an expert, but had only been called and questioned as a fact witness. The court directed defense counsel to qualify him and allowed plaintiffs attorney to cross-examine him on the predicate. However, Dr. Lee was not tendered or accepted by the court as an expert witness.
Upon direct examination by defense counsel, Dr. Lee stated that Mr. Hebert's death was a sudden death, ruling out any causation of his death related to the actions of Plaquemine's staff regarding his ventilator. Dr. Lee discussed Mr. Hebert's frail health upon admission to Plaquemine in great detail, concluding that even if Plaquemine's staff was negligent in monitoring Mr. Hebert's vital signs, this negligence was not the cause of his death. Dr. Lee opined that patients with Mr. Hebert's range of symptoms commonly experience "sudden death episodes."
Considering the medical testimony presented, in combination with other evidence presented at trial, the trial judge granted Plaquemine's oral motion for involuntary dismissal. An involuntary dismissal in a bench trial can be likened to a directed verdict in a jury trial. A directed verdict is permissible in a jury trial for a medical malpractice or lost chance of survival when the plaintiff offers no evidence to support its claims, and when the facts presented so strongly support the defendant's position that no reasonable person could reach a contrary verdict. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 661 (La. 1989). Clearly, that is not the case here.
Further, the strength of the defendant's position must be evaluated under the appropriate standard for determining medical malpractice and lost chance of survival. The trial judge, in his reasons for granting the involuntary dismissal motion, determined that plaintiffs had not proven that Plaquemine's actions led to Mr. Hebert's death to a "medical degree of certainty." Plaintiffs raise this statement as one of their assignments of error, claiming that use of this standard constitutes legal error. We agree, finding that it is legal error to use the medical degree of certainty standard to rule on causation in a lost chance of survival case.
Louisiana's jurisprudence has held that the plaintiff must only prove causation in a lost chance of survival case by a preponderance of the evidence. Martin, 582 So.2d at 1278. Though the factfinder does have a wide amount of latitude in evaluating the credibility of the witnesses offered in determining causation, that credibility must be evaluated according to the proper standard. In the matter before us, the decision made by the trial court was based on an improper standard. Due to the trial judge's legally erroneous use of the improper standard in reaching his decision, *244 we find that the involuntary dismissal of plaintiffs' claims was legally erroneous as well.

CONCLUSION
For the foregoing reasons, the trial court judgment granting involuntary dismissal of plaintiffs' claims is reversed. We remand to the trial court for further proceedings in accordance with this ruling. Costs of this appeal are assessed against the defendant, Plaquemine Caring, LLC.
REVERSED AND REMANDED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurring.
I respectfully concur.
Although plaintiffs presented scant evidence to establish, by a preponderance of the evidence, that defendant's conduct caused Mr. Hebert to suffer a lost chance of survival, given Dr. Roddy's testimony that if someone had paid attention to Mr. Hebert's respiratory rate of 24 at 5:00 a.m., "we might have prevented this patient's death," I must concur with the result reached by the majority.