# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #030

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of June, 2018**, are as follows:

**BY GUIDRY, J.**:

2017-C-1488    ROGER BURCHFIELD AND CAROL BURCHFIELD  v. FORREST H. WRIGHT, M.D., THOMAS RENDA, M.D., AND WILLIS KNIGHTON MEDICAL CENTER (Parish of Caddo)

In this medical malpractice case, the jury declined to find the defendant surgeon's failure to refer the plaintiff for a cardiac consult before performing non-emergency gallbladder surgery had caused the patient to suffer a severe heart attack thirty or so hours later that ultimately necessitated a heart transplant rather than a heart bypass. Instead, the jury found the plaintiffs had proven the defendant's breach of the standard of care had resulted in the loss of a chance of a better outcome. The jury awarded the plaintiffs lump sum general damages, which the trial court in its judgment made subject to the Medical Malpractice Act's limitation on the total amount recoverable. The court of appeal found legal error in the verdict form necessitated de novo review of the damages awarded. The court of appeal affirmed the jury's determination the plaintiff had suffered a lost chance of a better outcome and awarded both general damages and special damages, including past medicals, future medicals, and lost wages. Because the court of appeal erred in failing to apply the jurisprudence of this court in determining the damages to be awarded in a lost chance of a better outcome case, we reverse and reinstate the jury's verdict, its lump sum award of general damages, and the trial court's judgment.

REVERSED; JUDGMENT OF THE DISTRICT COURT REINSTATED AND AFFIRMED.

**SUPREME COURT OF LOUISIANA**

**No. 2017-C-1488**

**ROGER BURCHFIELD AND CAROL BURCHFIELD**

**VERSUS**

**FORREST H. WRIGHT, M.D., THOMAS RENDA, M.D.,
AND WILLIS KNIGHTON MEDICAL CENTER**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
SECOND CIRCUIT,  PARISH OF CADDO**

**GUIDRY, Justice**

In this medical malpractice case, the defendant surgeon ordered pre-operative tests including a chest x-ray and an electrocardiogram ("EKG") before performing non-emergency gallbladder surgery on the plaintiff. However, the defendant did not review the results of these tests prior to performing the surgery, but had he done so, the tests would have alerted him to potential issues with the plaintiff's heart necessitating the ordering of a cardiac consult prior to surgery. Although the surgery itself was successful and uneventful, some thirty or so hours after discharge, the plaintiff suffered a heart attack and eventually had to undergo a heart transplant. The plaintiff and his wife brought suit against the defendant alleging medical malpractice. The defendant surgeon settled, and the Louisiana Patients' Compensation Fund ("PCF") intervened.

After a trial against the PCF, the jury declined to find the plaintiffs had proven the defendant's failure to review the test results and to refer his patient to a cardiologist before performing the surgery had caused the patient to suffer the subsequent heart attack that ultimately necessitated a heart transplant. Instead, the jury found the plaintiffs had proven the defendant's breach of the standard of care

1

had resulted in the loss of a less than even chance of a better outcome. The jury awarded the plaintiffs lump sum general damages, which the trial court in its judgment made subject to the Medical Malpractice Act's limitation on the total amount recoverable by the plaintiffs, La. Rev. Stat. 40:1231.2.

The court of appeal found legal error in what it deemed to be a "patently inconsistent" jury verdict in light of the verdict form, thereby necessitating *de novo* review of the case. Following its review, the court of appeal nonetheless found the jury's determination that the plaintiffs had proven a lost chance of a better outcome was clearly supported by the record. The court of appeal then awarded general damages (affirming the trial court's award), but it also awarded special damages, including past medicals, future medicals, and lost wages, which it did not subject to the Medical Malpractice Act's limitation on the total amount recoverable. Because we find error in the court of appeal's decision, we hereby reverse that decision and reinstate the jury's verdict, its award of lump sum general damages, and the trial court's judgment.

FACTS and PROCEDURAL HISTORY

Referred by his gastroenterologist to resolve gastric complaints, Roger Burchfield, then age 58, was admitted to Willis-Knighton Medical Center on August 14, 2013, for non-emergency gallbladder surgery, specifically a laparoscopic cholecystectomy, to be performed by Forrest Wright, M.D. Though Dr. Wright ordered a pre-operative chest x-ray and EKG, which were completed, neither the chest x-ray nor the EKG was read by Dr. Wright prior to the surgery. The x-ray would have revealed Mr. Burchfield had congestive heart failure, while the EKG indicated possible left atrial enlargement, nonspecific intraventricular block, and two possible prior heart attacks, a septal infarct and an inferior infarct. None of these ailments was apparently known to the patient, according to his testimony at trial.

2

Mr. Burchfield was placed under general anesthesia and Dr. Wright performed the surgery successfully. There were no intraoperative complications, and, with no apparent complications, Mr. Burchfield was discharged later that day. Upon discharge, Mr. Burchfield returned home and initially had no issues eating or walking. Approximately thirty hours later, Mr. Burchfield began experiencing edema in his lower extremities and difficulty "getting comfortable." On August 16, 2013, he presented to a local emergency room where he was determined to be in critical condition, and was transferred back to Willis-Knighton and admitted to the intensive care unit.

At Willis-Knighton, it was determined that Mr. Burchfield had suffered an acute myocardial infarction, respiratory failure, along with worsening of his pulmonary edema, congestive heart failure, and bi-lateral pleural effusions. Mr. Burchfield was intubated and placed into a medically-induced coma. A heart catheterization was performed, an intra-aortic balloon pump was placed to allow his heart to pump, and he was placed on a ventilator.

Ultimately, it was determined Mr. Burchfield was not a candidate for heart bypass surgery, so he was transported to Baylor Medical Center in Dallas on August 22, 2013, and evaluated. On September 3, 2013, Mr. Burchfield underwent a heart transplant. He has recovered successfully from this surgery, but was unable to return to his previous profession as a mechanic and will necessarily require medical treatment related to the transplant for the remainder of his life.

Mr. Burchfield and his wife Carol filed a medical malpractice claim naming Dr. Wright, the radiologist, and Willis-Knighton as defendants. The plaintiffs alleged Mr. Burchfield was suffering from congestive heart failure, as revealed by the x-ray, and that Dr. Wright should have either not gone forward with the surgery or taken pre-operative precautions before doing so. Plaintiffs settled their claims

3

against Dr. Wright for $100,000.00, reserving their rights against the PCF for excess damages. The remaining defendants were ultimately dismissed.

A Medical Review Panel concluded Dr. Wright had breached the standard of care by failing to review the pre-operative tests he had ordered. The panel opinion observed that the gallbladder surgery was not an emergency. The panel opined that the chest x-ray report "warranted postponing the surgery until a cardiology consult could be obtained [and that] the failure to review the chest x-ray report and request a cardiology consult was a factor of the resultant damages."[1]

The case proceeded to trial against the PCF. The Verdict Form, which the parties had negotiated and accepted, was answered by the jury in the following manner. Question No 1: "Have the plaintiffs proven, by a preponderance of the evidence, that Dr. Forrest Wright's breach of the applicable standard of care was a substantial factor in contributing to the injuries of Roger Burchfield?" The jury checked the "No" box. The form then indicated: "If your answer is 'yes,' proceed to Question No. 2. If your answer is 'no' then, proceed to Question No. 6." Assuming the jury found causation in Question No. 1, Question Nos. 2-5 concerned damages for past and future pain and suffering, past and future disability, past medical expenses, past lost wages, future lost wages, future medical care, and loss of consortium for Mrs. Burchfield. However, because the jury answered "no" to Question No. 1, it then proceeded as directed on the form to Question No. 6, which provided: "Do you find that Roger Burchfield lost a chance of a better outcome as a result of the breach of the standard of care by Forrest Wright, M.D.?" The jury checked the "Yes" box to Question No. 6. The Verdict Form then instructed: "If your answer to the above question is no, please STOP and have the foreperson sign and

---

[1] The Panel was composed of two general surgeons and an anesthesiologist. The Panel's opinion did not specify what the "resultant damages" entailed.

4

call the Bailiff. If 'yes' proceed to Question No. 7." Question No. 7 provided: "What damages do you find that Roger Burchfield and/or Carol Burchfield suffered in connection with a loss of a chance of a better outcome?" The jury answered "$680,000." The Verdict Form was signed and dated by the foreperson.

The trial court later issued a judgment against the Patient's Compensation PCF in the amount of $400,000.00 plus judicial interest from February 20, 2014, and court costs, after crediting the PCF with the $100,000 settlement with Dr. Wright and applying the limitation on damages under the Medical Malpractice Act. The plaintiffs thereafter moved for a judgment notwithstanding the verdict, which the trial court denied.

On appeal, the appellate court agreed with the jury that Mr. Burchfield suffered a lost chance of a better outcome as a result of Dr. Wright's breach of the standard of care, but it found the jury's responses to the Verdict Form were "internally inconsistent, contributing to the troublesome reduction by the trial judge of the jury's award." *Burchfield v. Wright*, 51,459 p. 4 (La. App. 2 Cir. 6/28/17), 224 So.3d 1170, 1173. The appellate court agreed with the plaintiffs that the trial court had erred in concluding that a lost chance of a better outcome could consist only of general damages, and thereby subject to the Medical Malpractice Act's limitation on the total amount recoverable, reasoning that "the **answers** to interrogatory numbers one and six on the jury verdict form to be **patently inconsistent**, leading to an inability of the jury to consider all of the damages suffered by the Burchfields as a result of Roger's heart transplant." *Id.* [Emphasis in original.] Finding this perceived inconsistency to be legal error, the appellate court reviewed the record *de novo* and concluded the record clearly supported the jury's determination that Mr. Burchfield had suffered a lost chance of a better outcome. *Id.* at p. 6, 224 So.3d at 1174. The appellate court found the jury had not been properly instructed on how to quantify

5

the resultant damages on the Verdict Form. The appellate court cited this court's instructions on that precise issue in *Smith v. State, Dept. of Health & Hosps.*, 95-0038 (La. 06/25/96), 676 So.2d 543, but then it found the trial court had erred in considering the jury's award as general damages and subject to the Medical Malpractice Act's limitation on total recoverable damages, without awarding the plaintiffs past medical awards, future medical care, and lost wages. *Id.* at pp. 7-9, 224 So.3d at 1175. The court of appeal affirmed the trial court's $400,000 award in general damages, but it additionally awarded past medical expenses of $692,850.64, future medical care, and lost wages of $493,020.00, none of which it made subject to the Medical Malpractice Act's limitation on the total amount recoverable by the plaintiffs. *Id.* at pp. 9-11, 224 So.3d at 1176-77.

We granted the writ application of the Patient's Compensation Fund to review the appellate court's decision to conduct a *de novo* review and to award additional and separate damages for past medical bills, future medical care, and lost wages, not subject to the Medical Malpractice Act's limitation on the amount of recoverable damages. *Burchfield v. Wright*, 17-1488 (La. 12/15/17), 231 So.3d 643.

DISCUSSION

The PCF asserts essentially four assignments of error. First, it contends the court of appeal failed to follow the decisions of this court that provide that the only available recovery in a loss of chance claim is a lump sum award, which is in the nature of a general damage. The PCF argues that, as a result, the appellate court committed a number of interrelated errors by finding that the jury's answers to the Verdict Form were internally inconsistent and that the form did not adequately state the law, by conducting a *de novo* review, and by rendering separate and distinct awards for general damages, lost wages, and medical expenses. Second, the PCF asserts the court of appeal erred in finding that Mr. Burchfield was entitled to future

6

medical care pursuant to La. Rev. Stat. 40:1231.3, because it is not an available remedy in a claim for loss of a chance of a better outcome. Third, the PCF asserts the court of appeal erred in not applying the Medical Malpractice Act's limitation on the total amount recoverable by the plaintiffs, as provided by La. Rev. Stat. 40:1231.2, which prohibits recovery, exclusive of future medical care and related benefits, from exceeding $500,000.00. Fourth, the PCF asserts the court erred in concluding Mr. Burchfield was deprived of a chance of a coronary bypass when the weight of the evidence is that he was never a candidate for the procedure due to his pre-existing conditions, including congestive heart failure, hypertension, and two, but possibly four, prior heart attacks. The PCF suggests that Mr. Burchfield was deprived of at most a cardiac consult prior to surgery and that the small chance of a better outcome merits a reduction in the lump sum award to $250,000.

The plaintiffs counter the court of appeal correctly conducted a *de novo* review of the record and properly concluded the plaintiffs' damages were caused by the defendant's medical malpractice. The plaintiffs also note they had pointed out to the court of appeal that the trial court's jury charges did not comport with this court's preferred civil jury charges. The plaintiffs alternatively argue that, under any standard of review, they proved their damages caused by the defendant's medical malpractice exceeded the maximum award allowed under the Medical Malpractice Act. They argue the evidence and expert testimony established that Mr. Burchfield more probably than not would have received a heart bypass instead of a transplant if he had been properly treated and diagnosed by Dr. Wright. The plaintiffs assert the record supports the court of appeal's finding that but for Dr. Wright's breach of the standard of care, Mr. Burchfield would not have experienced the damage he did – a resultant heart attack. The plaintiffs alternatively argue that they are entitled to seek both damages that were definitely caused by the malpractice and additional damages

7

that could be awarded in the form of "lost chance." They claim there was evidence of damages that could have fallen in either category, but the trial court declined to allow multiple awards by the use of erroneous jury instructions and the Verdict Form. Next, the plaintiffs assert that, analyzed as a lost chance of a better outcome case, their damages fully exceeded the medical malpractice limitations on damages, and a lost chance is not limited to general damages, but entitles the plaintiff to full damages – not only general damages, but also medical expenses, lost wages, and lost consortium. As to lost wages, the plaintiffs assert that they are not subject to the Medical Malpractice Act's limitation on recoverable damages because they could reasonably be included as future medical expenses and "related benefits," under La. Rev. Stat. 40:1231.2. Finally, the plaintiffs argue they proved Mr. Burchfield would require future medical care for the rest of his life and thus they were entitled to future medical care not subject to the Medical Malpractice Act's limitation on total recoverable damages.

Essentially, the plaintiffs' theory of the case commences with the assertion that Dr. Wright should have read the EKG and the x-ray reports he had ordered prior to surgery, and that his failure to read those reports, to discern that they revealed Mr. Burchfield was suffering from congestive heart failure and had suffered two prior heart attacks, and therefore to refer Mr. Burchfield for a cardiology consult before conducting the gallbladder procedure constituted a breach of the standard of care. The PCF does not dispute that Dr. Wright's actions constituted a breach of the standard of care. Though he testified he was asymptomatic, Mr. Burchfield's condition prior to the gallbladder surgery was later determined to include congestive heart failure, cardiomegaly, resistant hypertension, coronary artery disease, resistant hyperlipidemia, and two, or possibly four, prior heart attacks. Accordingly, there is no doubt that Mr. Burchfield required medical intervention of some kind. The

question, however, was what modality of treatment was required, and did Dr. Wright's negligence deprive Mr. Burchfield of a less invasive treatment, such as a coronary bypass operation, rather than the more serious heart transplant he ultimately received.

The plaintiffs make alternative contentions. Primarily, they contend Dr. Wright's decision to proceed with the surgery directly resulted in, and thus substantially caused, a worsening of Mr. Burchfield's condition, the acute myocardial infarction, and the resultant heart transplant, necessitated by the damage caused by the subsequent heart attack. Thus, they asserted that Dr. Wright's decision to proceed with the surgery, which involved placing Mr. Burchfield under anesthesia and undergoing the laparoscopic surgery, rather than call for a cardiology consult and a workup as a bypass candidate, was a substantial cause of the ultimate heart transplant. As plaintiffs' counsel argued to the jury, the gallbladder surgery was the straw that broke the proverbial camel's back, and that Mr. Burchfield more likely than not could have undergone a coronary bypass and not have been required to undergo the heart transplant and take medications and an immunosuppressant for the remainder of his life. Alternatively, the plaintiffs contend that, even if there was not more than a 50% chance that Mr. Burchfield would have been a candidate for a coronary bypass, there was some chance that he would have been such a candidate and could have had a better outcome than having to undergo a heart transplant. The jury, as the Verdict Form shows, unanimously rejected the plaintiffs' contention that Dr. Wright's failure to call a cardiology consult before proceeding with the surgery was a substantial cause of Mr. Burchfield's condition to worsen, resulting in a heart attack, and having to undergo a heart transplant. Instead, the jury agreed with the plaintiffs' alternative theory that Dr. Wright's breach of the standard of care did deprive Mr. Burchfield of a chance of a better outcome.

9

For the reasons set forth below, we find the court of appeal misconstrued the theory of lost chance of a better outcome in a medical malpractice case and misapplied our settled jurisprudence on the determination of damages in a lost chance of a better outcome case. In analyzing the issues presented in this case, we must first examine the theory of lost chance of survival and lost chance of a better outcome in the context of medical malpractice cases, the nature of loss of chance damages, and the methodology for determining them.

Medical malpractice has been defined by La. Rev. Stat. 40:1299.41(A)(8)[2] as:

> [A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.

La. Rev. Stat. 9:2794(A)(3) provides that the plaintiff in medical malpractice actions has the burden of proving by a preponderance of the evidence that as a proximate result of the lack of knowledge or skill or failure to exercise the degree of care required, the plaintiff suffered injuries that would not otherwise have been incurred. Thus, the plaintiff must establish the standard of care applicable to the charged physician, a violation by the physician of that standard of care, and a causal connection between the physician's alleged negligence and the plaintiff's injuries resulting therefrom. *Pfiffner v. Correa,* 94-0924, 94-0963, 94-0992, p. 2 (La. 10/17/94), 643 So.2d 1228, 1230

The loss of a chance of a better outcome is a theory of recovery recognized in *Hastings v. Baton Rouge General Hosp.*, 498 So.2d 713 (La. 1986). *See also Martin v. East Jefferson General Hosp.*, 582 So.2d 1272 (La. 1991). It is not a separate

---

[2] Redesignated as La. Rev. Stat. 40:1231.1(A)(13) by H.C.R. No. 84 of the 2015 Regular Session.

cause of action distinct from a statutory malpractice claim. *See Bailey v. Knatt*, 16-1130 (La. 10/10/16), 207 So.3d 407. Under this theory of recovery, a plaintiff may carry his burden of proof by showing that the defendant's negligence was a substantial factor in depriving the patient of some chance of life, recovery, or, as in the instant case, a better outcome. The negligence need not be the only causative factor, but it must have increased the harm to the patient. *Hastings,* 498 So.2d at 720. Consequently, the plaintiff does not have to shoulder the burden of proving the patient would have survived if properly treated; he need only demonstrate the decedent had a chance of survival or recovery that was denied him as a result of the defendant's negligence. *Pfiffner,* 94-0924, 94-0963, 94-0992, p. 2, 643 So.2d at 1230; *Martin,* 582 So.2d at 1278.

The seminal case from this court is *Smith v. State, Dept. of Health and Hospitals*, 95-0038 (La. 6/25/96), 676 So.2d 543. We explained as follows:

> The issues in loss of a chance of survival cases are whether the tort victim lost *any* chance of survival because of the defendant's negligence and the value of that loss. The question of degree may be pertinent to the issue of whether the defendant's negligence caused or contributed to the loss, but such a tort-caused loss in *any* degree is compensable in damages.
> Allowing recovery for the loss of a chance of survival is not…a change or a relaxation of the usual burden of proof by a preponderance of the evidence. Rather, allowing such recovery is a recognition of the loss of a chance of survival as a distinct compensable injury caused by the defendant's negligence, to be distinguished from the loss of life in wrongful death cases, and there is no variance from the usual burden in proving that distinct loss.
> Thus, in a medical malpractice case seeking damages for the loss of a less-than-even chance of survival because of negligent treatment of a pre-existing condition, the plaintiff must prove by a preponderance of the evidence that the tort victim had a chance of survival at the time of the professional negligence and that the tortfeasor's action or inaction deprived the victim of all or part of that chance, **and must further prove the value of the lost chance, which is the only item of damages at issue in such a case.**

*Smith*, p. 6, 676 So.2d at 547[footnotes omitted; emphasis supplied].

Regarding the calculation of damages and the nature of such damages in a loss of chance of survival case, this court in *Smith* specifically instructed "the factfinder -- judge or jury -- to focus on the chance of survival lost on account of malpractice as a distinct compensable injury and to value the lost chance as a lump sum award based on all the evidence in the record, as is done for any other item of general damages." *Smith*, p. 7, 676 So.2d at 547. The *Smith* court held that "full recovery is not available for deprivation of a chance of survival of less than fifty percent." *Id.* The *Smith* court explained that "[t]o allow full recovery would ignore the claimants' inability to prove by a preponderance of the evidence that the malpractice victim would have survived but for the malpractice, which is a requirement for full recovery." *Id.*, 7-8, 676 So.2d at 547. The loss of a less-than-even chance of survival is "a distinct injury compensable as general damages" that cannot be calculated with mathematical certainty; thus, the factfinder must make a "subjective determination of the value of that loss, fixing the amount of money that would adequately compensate the claimants for that particular cognizable loss." *Id.*, p. 9, 676 So.2d at 548. The jury must consider "the same evidence considered by a jury in a survival and wrongful death action, and the loss-of-chance jury then reaches its general damages award for that loss on that evidence as well as other relevant evidence in the record." *Id.*, p. 11, 676 So.2d at 549. The jury may consider "all the evidence, including expert medical testimony regarding the percentage chances of survival,…to value directly the lost chance…." *Id.*

This court reaffirmed its decision in *Smith* that loss of chance damages are general in nature and extended the loss of chance theory of recovery to claims not only based upon the death of the patient but also to a loss of a chance of a better outcome. *Graham v. Willis-Knighton Medical Center*, 97-0188 (La. 9/9/97), 699 So.2d 365. The *Graham* court held that the loss of a chance to save a limb from

12

amputation is a "distinct injury compensable as general damages," and that full recovery for the loss of the limb was not allowed when the chance of saving the limb from amputation is less than fifty percent. 97-0188, p. 16, 699 So.2d at 373. *See also Hargroder v. Unkel*, 39,009 (La. App. 2 Cir. 10/29/04), 888 So.2d 953, *writ denied*, 04-2908, 04-2909 (La. 2/4/05), 893 So.2d 874 (applying *Smith* and finding the jury erred in failing to consider the degree of loss of chance of a better outcome and to award a lump sum for that element of damage, as is done in any other item of general damages).[3]

Turning to the issues presented in this case, we first find the court of appeal erred in concluding the jury's answers to Question Nos. 1 through 6 were inconsistent or fatally flawed. The parties negotiated and accepted the Verdict Form, and, as the court of appeal noted, the record "is unclear if there was sufficient objection to, or argument for, any proposed jury interrogatory." *Burchfield*, 51,459, p. 5, 224 So.3d at 1174. Our reading of Question Nos. 1 through 5 clearly shows they were related to plaintiffs' statutory malpractice claim, which required the plaintiffs to prove, by a preponderance of the evidence, that the defendant's breach of the standard of care was a substantial factor in causing Mr. Burchfield's injuries. Thus, to prevail on their claim, the plaintiffs were required to prove that the defendant's negligence in failing to review the preoperative tests caused injury to

---

[3] In *Hargroder* 888 So.2d 953, 957–58, the Second Circuit explained:

> The damage claimed in this case, loss of a chance of a better medical outcome, has its basis in cases dealing with loss of a chance of survival. *Smith v. State Department of Health and Hospitals*, 95–0038 (La.6/25/96), 676 So.2d 543. The issues in a loss of a chance of survival case are whether the tort victim lost any chance of survival because of the defendant's negligence and the value of that loss. The question of degree may be pertinent to the issue of whether the defendant's negligence caused or contributed to the loss, but such a tort-caused loss in any degree is compensable in damages. In such cases, the factfinder is to focus on the chance of survival lost on account of malpractice as a distinct compensable injury and to value the lost chance as a lump sum award based on all the evidence in the record, as is done for any other item of general damages. *Smith v. State Department of Health and Hospitals, supra.*

13

the plaintiff's heart to such an extent that a heart transplant was necessary, rather than a heart bypass. The thrust of the plaintiffs' claim was that, had Dr. Wright called for a cardiology consult prior to the gallbladder surgery, Mr. Burchfield would have forgone the surgery and at that time would have been a suitable candidate for a heart bypass; but, by failing to request the consult and proceeding with the surgery, Dr. Wright caused further damage to Mr. Burchfield's heart necessitating a heart transplant.

Clearly, the jury found the plaintiffs failed to make that showing by a preponderance of the evidence. The court of appeal may have implicitly found the jury's determination in this regard was not interdicted by the "inconsistent answers" to the verdict form. *See Burchfield*, pp. 5-6, 224 So.3d at 1174 ("Notably, in this case, the legal error in the verdict form did not affect all of the jury's findings, i.e., the jury's determination whether [Mr. Burchfield] suffered a lost chance of a better outcome --- the record clearly supports that. The problem lies with the determination of the monetary amount of damages for that lost chance…."). Regardless, the court of appeal should have applied a manifest error standard of review to the jury's finding that the surgeon's breach of the standard of care did not cause the heart attack ultimately necessitating the heart transplant. Had it done so, the court of appeal would have concluded, as we do, that there was no manifest error in the jury's finding in that regard.[4]

---

[4] It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Arceneaux v. Domingue*, 365 So.2d 1330, 1333 (La.1978); *Canter v. Koehring*, 283 So.2d 716, 724 (La.1973).

The testimonial evidence was conflicting on whether Mr. Burchfield would have been a candidate for a heart bypass, rather than a heart transplant, prior to the gallbladder surgery. As the plaintiffs concede, there was conflicting testimony as to whether the laparoscopic gallbladder surgery itself had directly caused the subsequent heart attack or if the surgery had caused the worsening condition that caused the subsequent heart attack. Moreover, as both the plaintiffs and

After finding insufficient proof of the plaintiffs' statutory malpractice claim, the jurors were appropriately directed to disregard Question Nos. 2 through 5, which concerned damages recoverable in a statutory medical malpractice claim, and to proceed to Question No. 6, which was related to the plaintiffs' alternative theory of loss of a chance of a better outcome. To that inquiry, the jury answered in the affirmative, and then was directed to Question No. 7 to award an amount of damages for the loss of a chance of a better outcome. The jury did so, awarding $680,000.00 as a lump sum general damages award.

We find no inherent conflict in the jury's answers to the interrogatories, and the closing arguments by counsel to the jurors certainly expounded upon the precise issues presented to the jury for resolution. The jurors were asked to determine whether the plaintiffs had sufficiently proven that Dr. Wright's negligence had caused the injuries necessitating a heart transplant, and the jury determined the plaintiffs did not meet their burden of proof. The jury was then asked to determine whether Dr. Wright's negligence had deprived the plaintiff of a chance of a better outcome, and the jury responded that it had. The jury then awarded a lump sum general damages award, after considering all the evidence of damages presented by the plaintiffs. There was no jury confusion here, and as the trial judge had

---

the court of appeal noted, there was also conflicting testimony among the experts as to whether Mr. Burchfield would have even been a candidate for a heart bypass at the time of the gallbladder surgery. Though the plaintiffs' various experts testified Mr. Burchfield might have been a candidate for heart bypass had a cardiac consult been requested prior to the surgery, the defendant's expert testified otherwise, believing Mr. Burchfield's heart was already too damaged prior to the surgery to be suitable for heart bypass surgery and that only a heart transplant was available to him at that time. *See Burchfield*, 51,459, pp. 8-9, 224 So.3d at 1175. The plaintiffs have argued that the testimony of the defendant's expert was not credible, while the defendant has pointed out that its expert was the only witness who had performed coronary artery bypass surgeries and also the only witness to have reviewed the heart necropsy report. Regardless, even the court of appeal ultimately reviewed this case under the theory of lost chance of a better outcome rather than a statutory malpractice case. Accordingly, because the testimonial evidence was conflicting as to whether Dr. Wright's negligence caused Mr. Burchfield to have a subsequent heart attack requiring a heart transplant rather than a heart bypass, we find no manifest error in the jury's determination that the plaintiffs failed to carry their burden of proof in that regard.

anticipated, the jury was able to understand and resolve the issues presented to it. Moreover, as the court of appeal itself specifically concluded, the record clearly supports the jury's determination that Mr. Burchfield suffered a lost chance of a better outcome. *Burchfield*, 51,459, p. 6, 224 So.3d at 1174. The Patient's Compensation Fund essentially concedes there was sufficient proof of a loss of a chance of a better outcome, though it has argued for a reduced lump sum award.

Where the court of appeal further erred, which prompted our grant of supervisory writs, was in the determination of damages allowed for lost chance of a better outcome. The court of appeal declined to follow clear and established jurisprudence from this court, set forth in *Smith* and *Graham*, *supra*. Instead of reviewing the jury's award under that jurisprudence, the court of appeal instead conducted a *de novo* review based upon a faulty premise regarding the jury interrogatories, and awarded not only general damages, but also separate awards of past medical expenses, lost wages, and future medical expenses.

The court of appeal found the jury had not been given adequate instructions on the verdict form or in the jury charge on how to quantify the damages for lost chance of a better outcome, and questioned whether any part of the award was intended to compensate emotional distress, lost wages, loss of consortium, or past medical expenses. *Burchfield*, 51,459, pp. 7-8, 224 So.3d at 1175-76. The appellate court, though it properly referred to this court's opinion in *Smith, supra*, nonetheless, relied on *Bianchi v. Kufoy*, 2010-0607 (La. App. 3 Cir. 12/08/10), 53 So.3d 530, for the premise that in calculating an award for lost chance of a better outcome, a jury may consider what otherwise would be elements of special damages, such as lost wages, and past, present and future medical expenses. Consideration of such damages may be appropriate, keeping in mind that a lost chance of a better outcome envisions a less than 50% chance, and thus not full recovery. But the court of appeal

16

did not stop there. Despite jurisprudence from its own circuit, *see Hargroder v. Unkel, supra*, note 2, it opined that lump sum damages for a lost chance of a better outcome "may include special damages to adequately compensate a patient, and that 'lump sum' damages should not be limited to the cap for general damages established by the Medical Malpractice Act." *Burchfield*, 51,459, p. 8, 224 So.3d at 1175.

There is no support for such a conclusion in this court's specific jurisprudence on the issue of the calculation of damages for lost chance of a better outcome. Moreover, to the extent that the *Bianchi* court's decision might support the court of appeal's approach, we disapprove of that rationale.[5] As we explained in *Graham*:

> When the chance of survival (or in this case of saving the leg from amputation) is less than fifty percent, the court may not award full damages for the loss of life (or loss of the leg). *Smith v. State, Dept. of Health and Hosp.,* 95–0038 (La. 6/25/96); 676 So.2d 543 (1996). Rather, the factfinder, judge or jury, focuses on the *chance* of survival (or the *chance* of saving the leg) that has been lost because of the malpractice and "value[s] the lost chance as a lump sum award based on all the evidence in the record, as i[s] done for any other item of general damages." 95-0038 at 7; 676 So.2d at 547. The "loss of a less-than-even chance of survival [or chance of saving a limb] is a distinct injury compensable as general damages which cannot be calculated with mathematical certainty, ... [and] the factfinder should make a subjective determination of the value of that loss, fixing the amount of money that would adequately compensate the claimants for that

---

[5] In *Bianchi*, the trial court had determined the physician had breached the standard of care, but that the plaintiff had failed to prove causation. On appeal, the court concluded the plaintiff had proven the physician's negligence had caused the plaintiff a lost chance of a better outcome. The *Bianchi* court quoted *Hargroder v. Unkel, supra*, which had relied on our decision in *Smith* to explain how to value a lost chance as a lump sum award. The plaintiffs sought $176,333.84 in past and future medical expenses and $2,150,000.00 in general damages "subject to the Medical Malpractice cap of $500,000.00." *Bianchi*, 10-0607, pp. 8-9, 53 So.3d 530. Nevertheless, without specifically discussing the imposition of a "lump sum" general damage award for lost chance of a better outcome, the *Bianchi* court, in calculating damages, reviewed previously incurred medical expenses, as well as the possibility of future medical expenses, and awarded $100,000 in past and future medical care and related expenses. It then awarded $300,000 in general damages and loss of consortium damages. Thus, the court awarded $400,000 for special and general damages. The *Bianchi* court did not address whether the Medical Malpractice Act's limitation on recoverable damages would apply, presumably because the total award did not exceed the Medical Malpractice Act's limitation. The *Bianchi* court certainly did not award the full damages requested by the plaintiffs, and thus may have implicitly accounted for the lost percentage of a better recovery in fashioning its ultimate "lump sum" award of $400,000. Nevertheless, to the extent the *Bianchi* decision may be interpreted contrary to our holdings in *Smith* and *Graham*, we disapprove of that decision.

particular cognizable loss." 95-0038 at 9; 676 So.2d at 548. "The jury's verdict of a lump sum amount of damages can be tested on appeal for support in the record by reviewing the percentage chances and the losses incurred by the tort victim and his or her heirs, and any other relevant evidence, thus providing assurance against speculative verdicts." 95-0038 at 11; 676 So.2d at 549.

*Graham*, 97-0188, p. 17, 699 So.2d at 373.

The court of appeal in this case failed to apply our jurisprudence in reviewing the jury's lump sum award. The jury was properly charged that it could consider all factors of damages in fashioning a lump sum award for lost chance of a better outcome, including past and future medical expenses and general damages. That charge included:

> In a medical malpractice action in which damages are sought for loss of any chance of a better outcome, the fact finder should make a subjective determination of the valuable [sic] of that loss, fixing the amount of money that would adequately compensate the claimants, which may include considering all the evidence of percentages of chance of a better outcome.

The court of appeal was correct that the record contains evidence of the total damages incurred by the plaintiffs: medical expenses for the transplant totaled $692,850.64; medications as a result of the transplant total $1,718.78 per month, with $1,202.77 per month for anti-rejection medication; future medical protocols as necessary for heart transplant recipients; and lost wages of $493,020.00. The court of appeal "affirmed" the trial court's award of general damages of $400,000.00, noting in detail the suffering of the plaintiff and his wife, but recognizing the trial court's application of the Louisiana Medical Malpractice Act's limitation on the total amount recoverable by the plaintiffs. In closing argument, the plaintiffs had argued that general damages for Mr. Burchfield should be between $750,000.00 to $1,000.000 and loss of consortium for Mrs. Burchfield should be between $50,000 and $75,000. As for the value of the lost chance of a better outcome, the plaintiffs argued to the jury that it should be 49% of the total damages, or roughly $1,000,000.

18

Although the jury did not specifically determine a percentage of a better outcome lost by the plaintiffs due to the defendant's failure to review the pre-operative tests, nor was it required to do so, it obviously found a significant percentage for a better outcome was lost when it valued the lost chance of a better outcome at some 35% of the total of the damages award sought by the plaintiffs. Given our review of the record testimony, we cannot say that the amount of $680,000.00 awarded by the jury as a "lump sum" in the nature of general damages was an abuse of the jury's discretion in making such an award. *See Graham, supra.*

CONCLUSION

For the reasons set forth above, we reverse the decision of the court of appeal and reinstate the jury verdict and the judgment of the district court, awarding the plaintiffs $680,000.00 for the lost chance of a better outcome, and applying the Louisiana Medical Malpractice Act's limitation on the total amount recoverable by the plaintiffs to reduce that amount to $500,000.00, plus judicial interest and costs, subject to a credit for the $100,000.00 paid by the defendant physician.

**REVERSED; JUDGMENT OF THE DISTRICT COURT REINSTATED AND AFFIRMED**