Judgment rendered November 15, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,081-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

FAIZAN FAROOQUI AND                         Respondents
FARHAT FAROOQUI,
INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF
AZRA FARHAT (D)

versus

BRFHH SHREVEPORT, LLC,                       Applicant
BRIJESH M. PATEL, M.D.,
EDWIN W. HERRON, M.D.,
AND THE STATE OF
LOUISIANA

* * * * *

On Application for Writs from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 600,602-A

Honorable Ramon Lafitte, Judge

* * * * *

JEFF LANDRY                          Counsel for Defendant
Attorney General                     Applicant, State of
                                     Louisiana

JABRINA CLAYTON EDWARDS
PHYLLIS E. GLAZER
ELIZABETH P. GROZINGER
Assistant Attorneys General

J. KYLE MCCOTTER                                    Counsel for Respondents


PATRICK R. JACKSON, APLC
By:  Ryan O. Goodwin


* * * * *


Before STONE, STEPHENS, and ELLENDER, JJ.


ELLENDER, J., dissents with written reason.

**STONE, J.**

## FACTS AND PROCEDURAL HISTORY

This writ arises from the First Judicial District Court, the Honorable Ramon Lafitte presiding. Ms. Azra Farhat presented at the hospital complaining of chest pain; she was admitted to the hospital, and approximately 6 days later underwent coronary bypass surgery. Her heart stopped beating and could not be revived, and thus she died. After a medical review panel ("MRP") proceeding, Ms. Farhat's family brought suit claiming damages for medical malpractice. The defendants filed a motion for summary judgment ("MSJ") asserting that the plaintiffs could not produce prima facie evidence of causation (of a compensable injury). The trial court denied the MSJ. The defendant sought supervisory writs with this court, and we granted the writ to docket. The matter is now before this court for resolution.

The summary judgment evidence around which the dispute centers is the following deposition testimony of Dr. Tommy Brown:

> Q So is it best or is there — a better way to put it is you believe there's a possible better outcome but you don't know whether there would be a probable better outcome?
>
> A ***In this patient, yes***.[1] If you look at the statistics it's a lot better to do bypass urgently if you have ongoing angina. On this specific individual with the description of the arteries that Dr. Hiller described, I don't know if it would have been any better.
>
> Q Now you had hit on earlier just to kind of stick with the same topic, some of those issues about Plavix and waiting the five to seven days, which I think is the American College of Surgeons recommendation as well, correct?

---

[1] The emphasized language demonstrates that Dr. Brown was specifically addressing Ms. Farhat's case, not making a general statement about statistics of similar cases.

A   Correct.

Q   The American College of Surgeons also talks about not waiting if surgery is urgent or emergent. You're saying that the profile that this patient is presenting with, two instances on the 17th, presented an urgent or emergent condition?

A   An urgent —

Q   An urgent condition?

A   Right.

Q   Okay. And your basis for the two instances reported overnight being an urgent condition is what?

A   Recurrent angina post-MI [i.e., post-myocardial-infarction], known triple-vessel coronary disease, normal LV [i.e., left ventricular] pump. That's a pretty class Ia indication.

**Summary judgment**

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.  La. C.C.P. art. 966(A)(3). A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791, 814. A genuine issue is one regarding which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate.  *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764.

Furthermore, "[i]n determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence." *Marioneaux v. Marioneaux*, 52,212 (La.

3

App. 2 Cir. 8/15/18), 254 So. 3d 13, 20-21. The prohibition on making credibility determinations on summary judgment extends to expert affidavits admitted without objection. *Aziz v. Burnell*, 21-187 (La. App. 3 Cir. 11/3/21), 329 So. 3d 963, *writ denied*, 21-01790 (La. 2/15/22), 332 So. 3d 1177; *Thompson v. Center for Pediatric and Adolescent Med.*, *LLC* 17-1088 (La. 1 Cir. 3/15/18), 244 So. 3d 441, *writ denied*, 18-0583 (La. 6/1/18), 243 So. 3d 1062. Finally, the court must draw those reasonable inferences from the undisputed facts which are most favorable to the party opposing the motion; likewise, all doubt must be resolved in the opposing party's favor. *Wyrick v. Golden Nugget Lake Charles, LLC*, 20-0665 (La. App. 1 Cir. 12/30/20), 317 So. 3d 708.

La. C.C.P. art. 966(D)(1) allocates the burden of proof on a motion for summary judgment as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Only certain types of documents may be offered in support of or in opposition to the MSJ. La. C.C.P. art. 966(A)(4). Likewise, the court may consider only those documents filed or referenced in support of or in opposition to the MSJ. La. C.C.P. art. 966(D)(2).

4

**Medical malpractice**

La. R.S. 9:2794(A) sets forth the essential elements of a medical malpractice action; they follow the traditional formulation of negligence – duty, breach, causation, and injury:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians… licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances…[2]
> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
> (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

The plaintiff must establish these elements by a preponderance of the evidence. *Id.*

The Louisiana courts have deemed *any* lost chance of a better outcome a compensable injury in a medical malpractice action. The seminal case from the Louisiana supreme court is *Smith v. State, Dept. of Health and Hospitals*, 95-0038 (La. 6/25/96), 676 So. 2d 543; the opinion explains that *any* lost chance is a compensable injury:

> The issues in loss of a chance of survival cases are whether the tort victim lost *any* chance of survival because of the defendant's negligence and the value of that loss…Allowing recovery for the loss of a chance of survival is not...a change or a relaxation of the usual burden of proof by a preponderance of the evidence. Rather, allowing such recovery is a recognition of the loss of a chance of survival as a distinct compensable injury caused by the defendant's negligence, to be distinguished

---

[2] If the defendant was practicing in a particular medical specialty in providing the allegedly deficient care, the plaintiff must establish the standard of care peculiar to that specialty.

from the loss of life in wrongful death cases, and there is no variance from the usual burden in proving that distinct loss. (Emphasis in original).

*Id.*

Finally, *Smith*, *supra,* retained the requirement that the plaintiff prove that the patient had some chance—any chance—of survival at the time of encountering the medical negligence in question:

Thus, in a medical malpractice case seeking damages for the loss of a less-than-even chance of survival because of negligent treatment of a pre-existing condition, *the plaintiff must prove by a preponderance of the evidence that the tort victim had a chance of survival at the time of the professional negligence and that the tortfeasor's action or inaction deprived the victim of all or part of that chance* (Emphasis added).

More recently, however, lost chance *of a better outcome* (distinct from lost chance *of survival*) became a compensable injury in the Louisiana jurisprudence. Thus, the Louisiana Supreme Court in *Burchfield v. Wright*, 17-1488 (La. 6/27/18), 275 So. 3d 855, 863, explained:

The loss of a chance of *a better outcome* is a theory of recovery recognized in…[Louisiana jurisprudence]. It is not a separate cause of action distinct from a statutory malpractice claim…[A] plaintiff may carry his burden of proof by showing that the defendant's negligence was a substantial factor *in depriving the patient of some chance of life, recovery, or, as in the instant case, a better outcome*…Consequently, the plaintiff does not have to shoulder the burden of proving the patient would have survived if properly treated; he need only demonstrate the decedent had a chance of survival or recovery that was denied him as a result of the defendant's negligence. (Emphasis added).

Accordingly, in this case, the dispositive issue is whether a reasonable juror could conclude that Dr. Brown's aforementioned testimony established (by a preponderance of the evidence) that the delay in performing surgery caused Ms. Farhat to lose any chance of a better outcome. At the beginning

6

of the deposition excerpt quoted above, Dr. Brown testified affirmatively to the existence of a chance of a better outcome, i.e., a "possible better outcome." His subsequent admission that he could not say it was a *probable* better outcome does not contradict his prior affirmation of *a* chance—*any* chance—of a better outcome. Reading the deposition in its entirety reveals that Dr. Brown did not elsewhere contradict or undermine his affirmation of a lost chance of a better outcome.[3]

Dr. Brown's testimony also indicates that the recommendation of the American College of Surgeons for Ms. Farhat's situation, regardless of the Plavix in her system, would have been to perform surgery without delay– because she presented two conditions which made the need for surgery urgent, namely:

> Recurrent angina post-MI [i.e., post-myocardial-infarction], known triple-vessel coronary disease, normal LV [i.e., left ventricular] pump. That's a pretty class Ia indication.

The MSJ does not deny that there was a delay, nor that the delay was a breach of the standard of care. Dr. Brown's testimony provides evidence sufficient for a reasonable juror to conclude that the delay cost Ms. Farhat some chance of an outcome better than death while in the surgery.

The defense's main argument amounts to conflation of the cause of action for *lost chance* with that of *wrongful death*. This fallacy is encapsulated on page 8 of the defense brief to this court, wherein the defense cites the

---

[3] Furthermore, the defense has not cited any other deposition testimony as undermining Dr. Brown's affirmation of a "possible better outcome," i.e., a lost chance of a better outcome. Likewise, the dissent claims that "the entirety of Dr. Brown's opinion makes it abundantly clear that he did not believe that an earlier bypass would have made any difference," but does not cite any particular testimony as contradicting Dr. Brown's affirmation of a lost chance. If the defense or dissent could find such testimony in Dr. Brown's deposition, then, presumably, they would cite such testimony; their failure to do so further confirms our reading of the deposition.

following testimony as a refusal to testify affirmatively as to Ms. Farhat's lost chance:

> Q    Do you have an opinion more probably than not as to whether Ms. Farhat *would have survived* this surgery had it been performed two to three days earlier? (Emphasis added).
>
> A    I don't know.

Had Dr. Brown stated that Ms. Farhat "would have survived" but for the delay, he would have provided evidence of wrongful death, which is unnecessary for establishing lost chance.[4] A plaintiff claiming that medical malpractice caused the loss of a chance of a better outcome need not prove that the malpractice caused the patient's death.

## CONCLUSION

This writ application is **DENIED** and the judgment of the trial court denying the defense's MSJ is **AFFIRMED.** The State of Louisiana is taxed with the full cost of this appeal, which totals $178.

---

[4] Similarly, Dr. Brown was asked, "can you say in any sort of medical probability that Ms. Farhat's outcome *could* have been better had she received surgery sooner than she did?" However, he did not answer the question asked. He stated: "I can't say that, because…I don't know that it *would* have been any different." The distinction between *would* and *could* is critical. In effect, Dr. Brown was asked whether the delay caused Ms. Farhat to *lose any chance of a better outcome*, but he did not answer that question at this point. Instead, he declined to say that the delay caused her *death*.

**ELLENDER, J., dissenting.**

I respectfully dissent, as I believe there are no genuine issues of material fact present in this case and the defendant is entitled to summary judgment as a matter of law. The majority has quoted excerpts from *Burchfield v. Wright*, 17-1488 (La. 6/27/18), 275 So. 3d 855, a case which discusses the concept of lost chance of survival and lost chance of a better outcome. However, other portions of that opinion stress that allowing recovery for the loss of a chance of survival "is not * * * a change or a relaxation of the usual burden of proof by a preponderance of the evidence. * * * [T]he plaintiff must prove by a preponderance of the evidence that the tort victim had a chance of survival at the time of the professional negligence and that the tortfeasor's action or inaction deprived the victim of all or part of that chance[.]" *Id.* at 11, 275 So. 3d at 863, quoting *Smith v. State*, 95-0038 (La. 6/25/96), at 6, 676 So. 2d 543, at 547. Considering that loss of a chance of a better outcome is "not a separate cause of action distinct from a statutory malpractice claim," *Burchfield*, *supra*, at 10-11, 275 So. 3d at 863, but only a separate theory of recovery, it still must meet the standard of a preponderance of the evidence.

Expert testimony is generally required to establish the applicable standard of care and whether that standard was breached, except in cases of very obvious negligence; this is especially true in the context of summary judgment, when the mover has supported its motion with expert medical opinion that the healthcare providers met the standard of care. *Nelson v. Shelat*, 54,099 (La. App. 2 Cir. 8/18/21), 325 So. 3d 1170, *writ denied*, 21-01354 (La. 11/17/21), 327 So. 3d 997, and citations therein.

1

Bearing in mind the normal burden of proof, I find the summary judgment evidence too equivocal and weak to create a genuine issue that the plaintiff will be able to prove, by the required preponderance, a lost chance of a better outcome.

Meeting that burden hinges entirely on one passage from the deposition of Dr. Tommy Brown, who served on the MRP. This is his testimony:

> Q. So is it best or is there – a better way to put it is you believe there's a possible better outcome but you don't know whether there would be a probable better outcome?
>
> A. In this patient, yes. If you look at the statistics it's a lot better to do bypass urgently if you have ongoing angina. On this specific individual with the description of the arteries that Dr. Hiller described, I don't know if it would have been any better.

The best that can be said of this poorly worded question and ambivalent answer is that, *statistically*, performing the bypass sooner would create a *possible* better outcome, but *in this specific individual*, he simply could not say. Unlike the majority opinion, I cannot agree that this is a sufficient statement to meet the burden of proof outlined in *Burchfield* or even to create a genuine issue that the plaintiff could do so at trial.

And this was an isolated passage from the long deposition. Ms. Farhat had presented to University Health with chest pains and was diagnosed with having had a heart attack. After admission, on Monday, doctors determined she needed coronary artery bypass grafting, but this had to be delayed until Friday to allow her blood thinner, Plavix, to clear her system. Even though she had *five documented episodes* of chest pain during that week, the procedure was not done any earlier; it was put off until Friday. While he concedes the standard of care would be to perform the

2

bypass sooner, the entirety of Dr. Brown's opinion makes it abundantly clear that he did not believe an earlier bypass would have made any difference. Instead, he felt her underlying coronary disease was unfortunately so advanced that Ms. Farhat's heart would not survive the demands of surgery. The overwhelming thrust of Dr. Brown's deposition has not entered into the majority's analysis.

While *any* chance of a better outcome is compensable, such a chance still must be proved by a preponderance of the evidence. This minuscule fragment of Dr. Brown's deposition simply does not create a genuine issue as to whether any chance of a better outcome existed, or that University Health's conduct deprived her of that chance.

For these reasons, I respectfully dissent.